THE SINGER MANUFACTURING COMPANY

*v.*

FREDERICK O. HOLDFODT.

1. EXEMPLARY DAMAGES — *when proper against corporation.* A corporation may be liable to vindictive damages for the wrongful act of its agent, perpetrated while ostensibly discharging duties within the scope of the corporate purposes.

| 86 | 455 |
| 135 | 669 |
| 86 | 455 |
| 158 | 556 |
| 86 | 455 |
| 163 | 414 |
| 86 | 455 |
| 65a | 324 |
| 86 | 455 |
| 70a | 225 |
| 86 | 455 |
| 79a | 267 |
| 86 | 455 |
| 186 | [5]150 |
| 86 | 455 |
| 95a | [1]144 |
| 86 | 455 |
| 200 | [4]622 |
| 103a | [1]562 |

2. Same—*in the particular case.* Where a sewing machine was sold, to be paid for in monthly installments, and a lease given and accepted providing that the vendor might without process enter and take possession of the machine for the non-payment of any installment, and the purchaser made all his payments to the agent selling the same, and afterwards the vendor, by other agents, entered the purchaser's house in his absence, and with force and violence removed the machine against the remonstrances of his wife, and kept the same for one day, when the same was returned, the party so taking claiming that it was done under the belief that full payment had not been made, but the evidence showing notice of the facts to the vendor's agents, it was *held,* that the case was one eminently proper for the imposition of exemplary damages.

3. Any unauthorized entry into a dwelling-house, or violent or grossly offensive conduct therein by a stranger, is deserving of prompt and adequate punishment. In such a case $500 damages is not excessive.

4. Agency—*of corporation, when presumed.* A person openly and notoriously exercising the functions of a particular agency of a corporation will be presumed to have sufficient authority from the corporation to so act.

5. Same—*notice to agent is same as to principal.* Knowledge of the facts in a matter by an agent transacting the business, and his acts, are the knowledge and the acts of his principal.

Appeal from the Superior Court of Cook County; the Hon. Joseph E. Gary, Judge, presiding.

Messrs. Eldridge & Tourtellotte, for the appellant.

Messrs. Magee, Oleson & Adkinson, for the appellee.

Mr. Chief Justice Scholfield delivered the opinion of the Court:

This was trespass, by appellee against appellant, for breaking and entering his dwelling-house, and taking and carrying away a sewing machine.

The verdict of the jury was in favor of appellee, assessing his damages at $800. Motion for new trial was made by appellant, whereupon appellee remitted $300 of his judgment, and the court overruled the motion for new trial, and gave judgment for appellee for $500.

It appears from the evidence that appellant is a corporation created by a law of the State of New York, doing business, through agents, in the city of Chicago. It had, when the transactions involved in this controversy were

enacted, an office, called its "head office," on State street, and an office under the control of one Wilkin, on Dearborn street. Wilkin says his arrangement with the "head office" was, to dispose of its sewing machines, take contracts therefor, deliver them to the "head office," do the collecting, and pay the money to the "head office." On July 27, 1872, Wilkin, in his capacity as agent for appellant, sold to appellee a sewing machine for $75, of which $10 was paid at the time, and the balance was to be paid in monthly installments of $5 on the 27th of each month. At the same time an instrument was signed by appellant, by Wilkin, and by appellee, reciting that appellant had leased the machine to appellee for thirteen months, at the price and terms of payment above stated as agreed upon for its purchase, and providing that, if default should be made in any payment, or any of the covenants therein of appellee, appellant should have the right to declare the lease forfeited, and either with or without process enter the premises of appellee, and search for and take and remove the machine. Appellee made all the payments required by his contract, as they matured, or before, and received the following receipt:

"*Chicago, October 28, 1873*.
"Mr. F. Holdfodt.
   "To 1 Singer Sewing Machine, No. 663,272,  -  $75.00
         "Rec'd payment,
                       "J. N. WILKIN, N. E. K."

The machine was delivered to appellee when he made the purchase, and remained in his possession until August 18, 1874, when appellant's agents, in the absence of appellee and against the remonstrances and exertions of his wife to prevent it, entered his dwelling-house and forcibly removed the machine and carried it to the head office.

Appellee testifies that in the preceding March, being informed that some one professing to be appellant's agent had, in his absence, been at his residence threatening to take the machine, he went to Wilkin's office and notified

him of the threat and showed his receipt, upon which Wilkin replied, "That is all right; they will not bother you any more;" that again, in May of the same year, hearing that appellant's agents had repeated their call at his house, he went to Wilkin's office and showed his receipt, and was then replied to, "We have nothing to do with this any more; you have to go to 111 State street." When he got there he informed a lady, who was acting as cashier, of the object of his visit — showed his receipt, and asked if it was all right. She called a man that was superintendent, as he supposes, and he stated his desire to him. The man replied: "There is something wrong; your receipt is all right, and if that man comes around again, I wish you would have him arrested."

There is no controversy whether the men who took the machine on August 18th were the agents of appellant. They testify they so acted, and under directions received from those in charge of the head office at 111 State street.

Appellant returned the machine to appellee on the day following that upon which it was taken — after appellee, however, had twice applied at the head office and once at the office of Wilkin, as appellee testifies. He also says they first wanted to make the return of the machine only upon condition that he returned his receipt, which he refused to do.

The other members of appellee's family, when appellant's agents removed the machine, and who were at his residence at the time, were his wife and three children, the eldest of which was about four years old, and the youngest a babe.

Two witnesses, apparently disinterested, testify that they witnessed the taking of the machine from appellee's residence. One of them, Annie Oleson, says, being attracted by the screams of appellee's wife, she went to the house; that she entreated the man not to take the machine until appellee's return, informing him that appellee had a receipt for it, but he said he would not; that there were two men, one of whom went into the house and took

the machine, and the two put it into a wagon and drove off with it; that appellee's wife was in delicate health, and was crying.    She also says appellee's wife made an effort to prevent the removal of the machine.    The other witness, Mrs. Minnie Weise, in substance, corroborates as to the health of appellee's wife; that she was excited and crying, and that the occurrence created some attention in the neighborhood.

It is claimed by appellant that the machine was taken in good faith, though under a mistake in respect to the fact of payment having been made for the machine by appellee. Wilkin says in some way he omitted to report to the head office the payment of $10, and the books at that office showing nothing of this payment, it is claimed those in charge of it honestly supposed they had a right to declare the lease forfeited, and acted accordingly; but, as soon as convinced of the error, they returned the machine in good condition.

It is contested that appellant, being a corporation, can not be made to respond in vindictive damages unless the wrongful act was authorized or approved by the corporation. This is not in accordance with the ruling of this court. Ever since the decision in *St. Louis, Alton and Chicago Railroad Company* v. *Dalby*, 19 Ill. 353, it has been regarded as settled law that, if the wrongful act of the agent is perpetrated while ostensibly discharging duties within the scope of the corporate purposes, the corporation may be liable to vindictive damages; and that a person openly and notoriously exercising the functions of a particular agency of a corporation will be presumed to have sufficient authority from the corporation to so act.

But, it is insisted, even if a corporation may be liable, in some cases, to vindictive damages, appellant can not be in this, because vindictive damages can not be assessed against a party for an act done in good faith, and with prudence and proper caution.    The only objection to this position is in the assumption that appellant, in taking the machine, acted in good faith and with prudence and proper caution.    It does

not appear, from anything before us, that the jury were clearly not warranted in believing that appellee testified to the truth ; and, if he did testify to the truth, then even the " head office " was expressly notified, after it had on two occasions sent a man to appellee's residence to threaten the taking of the machine, that it had been paid for. When thus notified, common prudence and common honesty alike required the correction of their books in accordance with the truth, so as to avoid any future misapprehension. But whether the " head office " was notified or not, was not of the slightest concern to appellee's rights. He had nothing to do with the " head office." Wilkin was appellant's agent, with ample authority to sell the machine and receive and receipt for the payment of its price. Appellee bought the machine from him, paid him in full, to the day, for it, and received his receipt. His act and his knowledge, in this transaction, were the act and knowledge of the appellant ; and the least that can be said of appellant's subsequently taking the machine by force from appellee's residence is that it resulted from its gross negligence.

We think, under the law and the evidence, the case is one eminently proper for the imposition of exemplary damages ; and it remains, therefore, only to determine whether the damages for which judgment was given are excessive.

When appellee made the last payment for his machine, all pretense of a license to enter appellee's residence and take it was ended. Thenceforth it was as secure against appellant's seizure as any other property appellee owned.

Any unauthorized entry into a dwelling-house, or violent or grossly offensive conduct therein, by a stranger, is deserving of prompt and adequate punishment. Such an act tends to violence — and it may be bloodshed — for so long as there is a feeling of manhood there will be a disposition to defend, at all hazards, domestic privacy and the rights with which the law invests the head of a family in his own domicile, and to fail to assert which is, by almost

universal public sentiment, deemed degrading in the extreme. Any violence thus resulting is not only dangerous to those between whom there may be conflict, but must also, many times, seriously imperil the helpless.

Any act of unwarranted force, or any vulgar or ruffianly conduct, by one in the home of another, the well-being of society demands shall be followed by such exemplary punishment as shall discourage its repetition, and we can not say the judgment is more than adequate to that end.

The judgment is affirmed.

*Judgment affirmed.*