Syllabus.

---

PULLMAN PALACE CAR CO. *v.* TRUEMAN P. LAWRENCE.

1. TRESPASS. *Jurisdiction. Citizenship. Location. Transitory action.*

    It is no defense to a transitory action of trespass brought in this state that the wrong was done and injury inflicted in another state, and that both plaintiff and defendant, a foreign corporation, were, at the time, are now, and have been continuously since, residents and citizens of such other state.

2. FOREIGN CORPORATIONS. *Jurisdiction.    Code 1892, ¿ 849.*

    Under code 1892, ¿ 849, foreign corporations may sue and be sued in this state as individual nonresidents may sue and be sued.

3. CAUSE OF ACTION. *Laws governing.    Tort.*

    Whether or not an *ex delicto* cause of action exists upon a state of facts, is to be determined by the law of the place where the matters complained of occurred.

4. SLEEPING CAR COMPANY. *Legal character.    Laws of Illinois.*

    Under the constitution of this state, all sleeping car companies are common carriers, but they are not technically so by the laws of Illinois.

5. PUNITIVE DAMAGES. *Law of Illinois.    Corporations.*

    It is the settled law of Illinois that corporations are liable for all the acts of their agents and servants who commit wrong while performing the master's business in the scope of their employment, and this to the extent of liability for punitive damages in proper cases.

5. SAME. *Wealth of defendant.*

    The wealth or pecuniary condition of a defendant may be shown with a view of enabling the jury to inflict proper damages by way of punishment in a case where punitive damages may be recovered.

6. PROOF OF WEALTH. *Corporation.*

    It is not impertinent or incompetent, where proof of the wealth of a corporation defendant is admissible, to inquire (*a*) the entire paid-up capital stock of the company; (*b*) what its liabilities are;

(*c*) what are the assets of the company; (*d*) what was the surplus of the company over and above liabilities, and (*e*) what dividends had been paid stockholders for five years past, and how they were paid.

7. TORT BY AGENT.   *Ratification by principal.*

If a defendant corporation be advised by one of its superior agents of a tort against a stranger committed by a subordinate agent, and strenuously endeavors to prove that the act of its subordinate agent was not tortious, and, when sued for the wrong, makes an unwarranted and violent attack on the conduct and character of the plaintiff, a verdict against it is justified on the ground of its having ratified the wrong.

8. ADVOCATE.   *Remarks of counsel.   Exceptions.   Practice.*

If improper remarks are made by counsel, it is the duty of the court to interpose, but if the court fail to do so, it is the duty of opposing counsel to call attention to the impropriety.   If opposing counsel fail, the wrong will not be corrected in the supreme court except in extreme cases of abuse of the advocate's privilege.

9. EXCESSIVE DAMAGES.

There is no fixed standard for measuring damages in actions for torts.   Each case must depend largely on its own facts.

FROM the circuit court of Claiborne county.
HON. W. K. McLAURIN, Judge.
The facts are stated in the opinion of the court.

*Percy Roberts* and *J. McC. Martin*, for appellant.

*Question of jurisdiction.*—Can a citizen residing in a foreign state sue the Pullman Palace Car Company, which is a citizen of and resident in the same foreign state with himself, in the circuit court of Mississippi, for a tort committed in the foreign state, of which both of them are citizens and residents, neither of them being citizens of or residents in Mississippi ?

Section 849 of the annotated code provides: " Corporations which exist by the laws of any other state of the union, may sue in this state by their corporate names, and they shall also

be liable to be sued or proceeded against, by attachment or otherwise, as individual nonresident debtors may be sued or proceeded against.'' The simple meaning of this section is: (1) That foreign corporations may sue in this state, by their corporate names, any person found in this state, in the county of such person's residence, or such corporation may proceed against any nonresident debtor, having property in this state, by attachment, etc.; (2) that foreign corporations shall also be liable to be sued or proceeded against, by attachment or otherwise, as individual nonresident debtors may be sued or proceeded against. Individual nonresident debtors can only be sued or proceeded against by attachment or garnishment thereunder.

Clearly, it never was the purpose to open the courts of this state to a nonresident claiming a right of action against a tort feasor residing in the same state with himself, for a wrong done in the state wherein both reside, especially where no reason appears for seeking the tribunals of this state, and especially when the plaintiff has not acquired, and does not even contemplate acquiring, a domicile in Mississippi. If such were the law, every person in the State of Illinois having a grievance against the Pullman Palace Car Company, could seek redress in the courts of this or any other foreign state, without first acquiring citizenship and without showing proper cause for coming to our courts, or without proceeding by attachment. Another effect would be to harass the nonresident foreign corporation with suits remote from its place of citizenship and remote from the place of residence of its witnesses, while it would be deprived of ordinary or compulsory process to compel the attendance of witnesses. Again, such right would contravene a fundamental principle of jurisdiction—one so carefully guarded by § 650 of the annotated code of Mississippi, and so fully provided for in our federal and state judicial systems—the principle which requires ordinary actions to be brought in the county of defendant's residence.

A careful review of the several decisions of the supreme court of Mississippi, bearing on the question at bar, brings to light no case directly in point. In the case of *N. O. J. & G. N. R. R. Co.* v. *Wallace*, 50 Miss., 244, the facts are briefly as follows: The plaintiff was a resident of this state. He received injuries in Louisiana, which resulted from a collision of trains. The defendant was regarded as a domestic corporation, and was so treated by the court.

In the case of *Chicago, etc., Railroad Co.* v. *Doyle*, 60 Miss., 977, the husband of plaintiff was killed by collision of trains in Tennessee. Plaintiff resided in Mississippi. She based her action on negligence said to have been commenced at Water Valley in Mississippi, and which resulted in the death of her husband, an engineer in the employ of defendant. It was claimed that a train dispatcher at Water Valley, in Mississippi, sent a message which was the moving cause of the injury. The court held "the view that no recovery could be had here, except for a result traceable to an omission of duty in Mississippi, is unfounded. Physical force resulting from this state and inflicting injury in another state, might give rise to an action in either state.

In the case of the *Illinois Central Railroad Co.* v. *Crudup*, 63 Miss., 298, the appellee resided in Mississippi. His son was fatally injured in a collision between trains of appellant in the State of Tennessee, and died a few days thereafter from the effects of the injury.

The plaintiff was a resident of this state, and was invoking the jurisdiction of the courts of this state on the principles of comity. In the case at bar, no question of comity can possibly arise, because all the parties and the wrong were subjects, and exclusive subjects, of the jurisdiction of the courts of Illinois.

In the case of *McMaster* v. *I. C. R. R. Co.*, 65 Miss., 264, the plaintiff was a citizen of Mississippi. Her son was killed in Louisiana. A demurrer was interposed to the declaration on the ground that her son came to his death by the careless-

ness and negligence of fellow servants.    No question of juris-
diction was involved.

The question presented in the case at bar is founded in the
facts that the plaintiff and defendant are both residents and
citizens of the State of Illinois; that neither at the time of
bringing the action in the circuit court of Claiborne county,
Mississippi, nor since, has the plaintiff been a citizen of and
resident in the State of Mississippi, nor has the defendant been
a citizen of and resident in the said state, Illinois being the
state of its creation, and that the jurisdiction of the circuit
court of the State of Mississippi is not invoked in good faith.
We are not wanting in authorities, however, of other states
that deny jurisdiction to a state over torts committed by citi-
zens of another state upon citizens of the same state and within
the territorial limits of the same state.

The following authorities maintain our contention: *Kahl* v.
*M. & C. R. R. Co.* (Ala.), 10 So. Rep., 661; *Newhaven Horse
Nail Co.* v. *Linden Springs Co.*, 142 Mass., 349; *Ferguson* v.
*Nelson*, 11 N. Y., 524; *Morris* v. *Pa. R. R. Co.*, 78 Tex.,
17; *Winchester* v. *Brown*, 13 N. Y., 655; *Gregory* v. *Lake Erie,
etc., R. R. Co.*, 40 N. J., 38; *Central R. R. Co.* v. *Banking
Co.*, 76 Ala., 388; *B. & O. R. R. Co.* v. *Adams Express Co.*,
22 Fed. Rep., 404.

*Question of punitive damages.*—Under what facts, conditions,
and circumstances can sleeping car companies be held liable in ex-
emplary damages; and can defendant be held liable in exemplary
damages, under the disclosures of the record in the case at bar ?

"The justification of exemplary damages lies in the evil in-
tent of the defendant, and the allowance of such damages is,
therefore, restricted to cases of wanton injury. There must be
some wrongful motive accompanying the wrongful act." Sedg-
wick on Damages, sec. 363; *Reeder* v. *Purdy*, 48 Ill., 261;
*Fornell* v. *Warren*, 70 Ill., 28; *Toledo W. & W. R. R. Co.* v.
*Roberts*, 71 Ill., 540; *Miller* v. *Kirby*, 74 Ill., 420; *Becker* v.
*Dupree*, 75 Ill., 167.

The evolution of the doctrine of damages and exemplary damages, so far as the establishment of rules to govern in the imposition of same, is, indeed, interesting. In the early history of the cases allowing exemplary damages, the court seems to have considered that the placing of the issue upon the country gave the jury unrestrained discretion. The general warrant cases, which are the earliest, were all upheld on this assumption. More enlightened reasoning, however, led to the necessity of putting some restraint upon such arbitrary power. In short, law would be no rule of action unless every claim, demand, or penalty was controlled by some fixed principle.

In applying the doctrine of exemplary damages to master and servant, in modern practice, the rule seems to depend upon the nature of the master with reference to his relation with the servant. Thus, the rule as applied to individual master and servant is different when applied to a common carrier and its servant, the difference, however, being the strictness of the application of the doctrine to the latter class of master and servant.

In fixing the rule making a principal liable in exemplary damages for the acts of his agent or servant, Sedgwick, section 378, citing a large number of leading cases, lays down the rule as follows: " It is the better opinion that no recovery of exemplary damages can be had against a principal for the tort of a servant or agent, unless the principal expressly authorizes the act as it was performed, or approves it; or unless the principal was grossly negligent in hiring the servant or agent, or unless the principal was grossly negligent in not preventing the servant or agent from committing the act." He also states the rule to be: " That the burden of showing authorization or approval by the principal is on the plaintiff." *The Amiable Nancy,* 3 Wheaton, 546; *Grund* v. *Van Vleck,* 69 Ill., 478; *Becker* v. *Dupree,* 75 Ill., 167; *Freese* v. *Tripp,* 70 Ill., 496.

To conclude this branch of the case, we say the record shows that the Pullman Palace Car Company did not authorize the

act of its waiter nor approve it; that it was not grossly negligent in hiring the waiter, if the waiter actually committed a tort; that it used every effort to ascertain the competency and habits of its waiter; and that there is nothing that shows that it employed or retained the waiter knowing him to be incompetent or knowing him, from bad habits, to be unfit for the position he occupied, and therefore instruction number five granted to plaintiff in no way should have been given by the court.

*Question of excessive damages.*—The approved rule, as laid down in Webb's Pollock on Torts and Sedgwick on Damages, and as approved by this court in the cases on the subject, and also in the case of *Pennsylvania Railroad Co.* v. *Kelly*, 7 Casey, 373, is as follows: "If the court is satisfied not only that its own finding would have been different, but that the jury did not exercise due judicial discretion at all, and that the damages given were so extravagant as to make it probable that the jury was actuated by passion, prejudice, undue influence or bias, the verdict should be set aside." There is and can be no contention about the rule applicable to setting aside excessive verdicts of juries. The verdict of the jury in the case at bar was for $34,666.75. It staggers reason to find anything in the record to sustain such a verdict. If it cannot be found in the record, then it must be found in malice, bias, prejudice, wantonness, undue influence or some other equally as vicious and wrongful moving cause. It is true a remittitur was entered in the court below reducing the judgment to $15,000, but the animus of the jury was not changed thereby, and the latter sum is grossly excessive.

*Miller, Smith & Hirsh*, for the appellee.

The right to institute this suit seems to us manifest, and we submit there can be no valid reason offered why our courts should not take jurisdiction. Our statute even expressly confers it, and we contend that the statute does not bear the inter-

pretation placed upon it by opposing counsel. Code of 1892, § 829.

Absolute and unlimited power is given foreign corporations to sue in this state, and not only are they authorized to sue, but they are authorized, by the express terms of said section, to act through their agents, and said acts shall have the same force and validity as the acts of the agents of private persons, and the only limitation upon their power to transact business in this state (except in the case of insurance companies) is that they shall not do or commit any act contrary to the laws or policy thereof.

But the right of action in this case is of common law origin, and the right to institute suit thereon in our courts exists independently of the statute. *I. C. R. R. Co.* v. *Crudup*, 63 Miss., 291. This case is placed by its reasoning upon the broad ground taken by the supreme courts of the United States, Minnesota and Kentucky, and expressly repudiates the doctrine of the courts of Ohio, Massachusetts and Kansas, and the case, of course, was one based upon a right of action for death allowed by a foreign statute.

In the case of *Chicago, St. Louis & New Orleans Railroad Co.* v. *Doyle*, 60 Miss., 977, no such question is raised as that sought to be made by appellant, that the residence of the plaintiff conferred jurisdiction. But this court gave vigorous enunciation to the high principle that, even in actions for a death grounded upon the statutes of foreign states, our courts will maintain jurisdiction because of the coincidence of that statute with ours on this point, and "independently of this, because a right of action created by the statute of another state, of a transitory nature, may be enforced here when it does not conflict with the public policy of this state to permit its enforcement, and our statute is evidence that our policy is favorable to such rights of action instead of being inimical to them."

In the case of *McMaster* v. *Railroad*, 65 Miss., 264, no question

was presented as to the residence of the plaintiff, and although the cause of action arose in Louisiana, yet the right to bring the suit in this state was not even in question, the court evidently regarding the law of this state as settled upon that subject, by its preceding decisions.   These three cases are all based upon statutory rights, and, certainly, if we will enforce the statutory right created by the laws of another state, because the right of action is transitory, we will sustain the right of action, transitory in its nature, which is purely of common law origin.

We confess we do not understand why the appellant cites the case of *Railroad Co.* v. *Wallace*, 50 Miss., for it not only fails to lend any aid to its contention, but strongly vindicates the plaintiff's right to bring this suit.   Here is a decision upon a case which was instituted as far back as 1869, and where the injury occurred in another state, and where the defendant, as in this case, plead to the jurisdiction of the court, and which plea, upon demurrer, was held invalid.   Judge Peyton, in delivering the opinion of the court, said: "Corporations are artificial persons existing only in contemplation of the law.   They must dwell in the place of their creation, and cannot migrate to another state. But they are liable to be sued like natural persons in transitory actions, arising *ex contractu* or *ex delicto* in any state, where legal service of process can be had."

That plaintiff had a perfect cause of action cannot be successfully denied.   It is immaterial whether defendant was a common carrier or not, and neither the original nor the amended declaration alleges it to be a common carrier.   Its liability for the acts of its servants, acting within the scope of their employment, is unquestioned.   This court, in *Richberger* v. *Express Co.*, 73 Miss., 161, states the doctrine with great clearness and force.

The Mississippi, New York, and Iowa cases all establish the liability of the Pullman Palace Car Company for the acts of its porter.   But as defendant has persistently claimed that this case is to be tried in accordance with the laws of the State of

Illinois, we are not without the adjudication of that state, defining some of the duties of the Pullman Palace Car Company to its patrons.

We refer to the case of *Nevin* v. *Pullman Palace Car Co.*, decided by the supreme court of Illinois in 1883, and reported in 11 Am. & Eng. Ry. Cases, 92. As this case was decided by the court of the state which created the defendant corporation, it has an important bearing upon the questions at issue here, and for that reason and for the intrinsic merit of the reasoning of the court, we confidently rely upon it. But in addition to the foregoing cases, which hold, as a. matter of law, that the porter represents his company, the testimony in this case conclusively establishes his agency as a matter of fact. The porter, Greenworth, testified that he had charge of the buffet, and attended to the duties imposed upon the other porter. It is therefore beyond question that this porter, or waiter, Greenworth, had full and absolute charge of this buffet, and was, in all respects and for all purposes, the representative of his company.

'' The plaintiff may show the defendant's wealth, that the jury may judge what may be a sufficient punishment.'' *Whitfield* v. *Westbrook*, 40 Miss., 311.

In the case of *Smith* v. *Wunderlinch*, 70 Ill., 446, the court says: '' Where exemplary damages are awarded in an action of tort, the pecuniary circumstances of the defendant may be considered, not to show that he is able to pay, but with a view to such damages as may be punishment.''

WOODS, C. J., delivered the opinion of the court.

This action was instituted by appellee, in the circuit court of Claiborne county, Mississippi, against appellant for the recovery of fifty thousand dollars, for personal injuries alleged to have been wilfully and wantonly inflicted upon appellee by one of the servants of appellant, employed as a waiter upon the sleeping car of appellant, in which appellee was being transported from Chicago, Ill., to New Orleans, La.

The complaint of appellee was filed in said court on January 2, 1896, and a summons duly issued, and duly executed by service upon a conductor of appellant, in the town of Port Gibson, in said county. The amended declaration is in these words, viz.: "Trueman P. Lawrence, a citizen and resident of the State of Illinois, complains of the Pullman Palace Car Company, a corporation existing under the laws of the State of Illinois, and a citizen of said State of Illinois, in an action of trespass on the case. For that whereas, heretofore, to wit, on or about the twenty-fifth day of October, 1895, the said defendant, being then and there engaged in running a line of sleeping cars over the line of the Illinois Central Railroad, between the city of Chicago, in the State of Illinois, and the city of New Orleans, in the State of Louisiana, and furnishing seats, berths, sleeping accommodations and lunches and other refreshments, such as are furnished by sleeping car companies for pay and reward in that behalf; and that, on the day and year aforesaid, the said plaintiff, being a passenger on said Illinois Central Railroad for the city of New Orleans, and entitled to travel as a first-class passenger on said railway company's line, entered one of the cars of said defendant at Chicago, Illinois, engaged his berth and paid the defendant the price thereof from said city of Chicago to said city of New Orleans; and it then and there became the duty of said defendant and its employes to secure the comfort and safety of said plaintiff, and protect him from injury or wilful misconduct of any of its employes; yet the said defendant and its employes did not secure the comfort and safety of said plaintiff, or protect him from injury or the wilful misconduct of said employees, as aforesaid, but, on the contrary, one of the employes of said defendant— to wit, the colored porter employed by said defendant, and who was then and there in charge of the buffet of said defendant— while in the discharge of his duties as the employe of said defendant, did wantonly, wilfully, and maliciously injure and damage said plaintiff, in this—that is to say, about 10 o'clock

at night, on the day and date last aforesaid, plaintiff, then and there occupying the smoking room of said sleeper in company with one David Henderson, and being the only occupants of said compartment, inquired of said Henderson if he thought he could get a sandwich at that hour of the night, and said Henderson replied he thought he could, and he then rang the bell for the porter, who failed to appear, and, after waiting some time, he rang again, and, finally, the said employe of said defendant, whose name, as plaintiff afterward learned, was C. H. Greenworth, appeared, having the linen for his bed, which he angrily threw down on a seat; whereupon plaintiff said to him, in a polite manner: "Porter, could we have, or, is it possible for us to get a sandwich at this hour?" He then and there answered, "No. I am tired of being imposed upon at this time of night; I am going to bed," or words to that effect, his manner being exceedingly rude and offensive. Mr. Henderson then spoke to him quietly, saying, "Why can't you answer the gentleman civilly?" Whereupon the said porter said to him, "You go to hell!" Plaintiff then quietly asked him for his name, saying that he would report him to the company, his employer. The porter then said, "My name is C. H. Greenworth. You can report and be damned. You have got my temper up now, and I will just mash you both;" and, turning to plaintiff, shook his fist in his face and said, "I will kill you!" He then struck the plaintiff with his fist savagely. The first blow knocked off the eye-glasses of plaintiff, by which he was rendered absolutely helpless, and he sat there not daring to move, the attack being sudden and violent. At this juncture the said Henderson started quickly to call the conductor, when the said porter, Greenworth, seeing his movement, caught the ventilator stick belonging to the car, and, as said Henderson passed into the passage leading into the body of the car, struck him with it, and then turning to the plaintiff, still sitting, struck him with said stick, and then raised the stick for the purpose of striking again, when

two other porters, in the employ of said Pullman Palace Car Company, came to his rescue and pulled him off.

Plaintiff then further avers that said attack of said porter was wanton, wilful, malicious and utterly unprovoked by any act or word of plaintiff, and was made while the porter was in the employment of the defendant, while discharging the duties of said defendant, and while acting in the scope of his employment. Plaintiff avers, also, that he was greatly shocked in his nervous system and was injured by said blows, and that he has suffered great pain and bodily and mental anguish, and has been permanently injured in his health, and that he has been deprived of the means of continuing his usual occupation, and is thereby utterly unable to earn a livelihood, and that but a short time before the said assault, he was able to earn, and did earn, from $2,000 to $3,000 a year.

The defendant first pleaded to the jurisdiction of the court, because the wrong and injury complained of occurred wholly in the State of Illinois, and not in the State of Mississippi, and because the plaintiff and the defendant were, at the time of the bringing of the suit, and still are, citizens of and residents in the same State of Illinois. To this plea to the jurisdiction plaintiff demurred, and the demurrer was sustained and leave was given defendant to plead to the merits.

The defendant then filed the general issue, and gave notice thereunder that it would prove the following affirmative matter in avoidance of the action, viz.: "(1) That said plaintiff committed an assault and battery upon said porter of said defendant, unprovoked and while said porter was in the discharge of the duties for which he was employed; (2) that plaintiff was drunk and disturbing the peace on the car of the defendant, and making threatening and hostile demonstrations towards the porter of defendant; (3) that plaintiff was drinking and using profane and offensive language on the car of defendant and towards the porter on said car of defendant while the porter was in the discharge of his official duties; (4) that plaintiff

suffered no injury whatever from defendant, and that no harm whatever was done to him, physically or otherwise, by the said porter of defendant, as charged in the declaration; (5) that the plaintiff commenced drinking excessively and continuously from the time when defendant's car, in which plaintiff was riding, left Chicago up to the time that the alleged difficulty took place, . . . and that said difficulty was provoked by and through the wrongful actings and doings of plaintiff."

This notice of special matter was amended by defendant as follows: "The plaintiff, who was riding in the smoking compartment of defendant's sleeper, after the hour for retiring, said compartment being set aside for the use of the employes of the company after ten o'clock at night, asked the waiter in said sleeper for a sandwich, and that the waiter informed him (plaintiff) that he could not serve the sandwich in the smoking compartment after ten o'clock at night, as it was against the rules of the company, the said compartment being set aside, as aforesaid, for the use of the employes of defendant after said hour; but that said waiter offered to serve the same in the body of the car; whereupon plaintiff declined to have it served there, and insisted on having it served in the smoking compartment."

The declaration has been set out by us because, by reason of its extraordinary fullness, precision, and clearness in averring the facts on which plaintiff bases his cause of action and his right of recovery, little or no reference need be made by us hereafter in this opinion to the evidence offered to support plaintiff's complaint, it being sufficient to say that every material averment of the pleading was abundantly proved by the plaintiff and his companion, David Henderson, in the evidence, and this evidence the jury has found to be true. As to the evidence offered by defendant, under its notice filed with its plea of the general issue, it is enough to say that the jury did not accept it as true in any of its vital phases, and we see no reason for disagreeing with the jury on the facts. The very serious and permanent character of the injury received and suffered by

plaintiff, was shown by the expert and other evidence, and it can hardly be said that the defendant seriously attempted to controvert this testimony.

It is indisputable that the system of rules which the defendant has adopted for the government of its servants in the discharge of their duties, and for the guidance of the traveling public using its sleeping and buffet cars, are communicated to the servants by oral instructions only, which are given from time to time by superior agents of defendant, and that neither on its bills of fare, nor on any printed notices or posters, nor in any other manner, except as advised by defendant's employes in specific instances, are these rules brought to the knowledge of those being carried on defendant's cars. It would seem to be an unheard-of requirement to demand obedience to the defendant's rules, when those rules are not published and are not known to travelers who are to be guided by them. But we do not dwell upon this in the present case, because we regard this question as to the operation and effect of such rules as of trifling concern in the case before us, on its other facts.

We proceed now in an orderly manner to consider some of the questions of law presented for determination by the appellants' assignment of errors. 1. It is assigned for error that the court below erred in sustaining plaintiff's demurrer to the plea to the jurisdiction filed by the defendant.

Until the hearing of the able and exhaustive oral argument of appellant's counsel in support of this assignment, we had supposed there was, in our own state, no ground left for dispute that, in transitory actions, whether in tort or on contract, our courts were wide open to any suitor, resident or nonresident, against his adversary, whether resident or nonresident, whether a natural person or an artificial one, regardless of where the right of action occurred, if only the courts had jurisdiction of the subject-matter, and could obtain jurisdiction of the party, either by a voluntary appearance, or by service of process. We are aware that there is some divergence of opin-

ion on this subject between the courts of last resort in this country, and that apparent authority can be found for holding that a foreign corporation resident in one state may not be sued in another state by a resident of the first state on a cause of action arising in the first state. But even these cases will be found to be governed by the peculiar statutes of the state declining to take jurisdiction, or that the refusal to take jurisdiction rested upon some unusual circumstances which deterred the court from entertaining the suit, or because of a supposed distinction between statutory rights and common law rights. But in many states, and amongst them our own, the rule we first announced has been firmly established by repeated adjudications. The rule was first expressly declared in our own state in the case of the *New Orleans, Jackson & Great Northern Railroad Co.* v. *Wallace,* 50 Miss., 244. That was an action brought by Wallace against the railroad company, a foreign corporation, in one of the courts of this state, for the recovery of damages for injuries sustained by him in a collision of trains in the State of Louisiana. The court said then, on this very question: ''Corporations are artificial persons, existing only in contemplation of law. They must dwell in the place of their creation, and cannot migrate to another state. But they are liable to be sued, like natural persons, in transitory actions arising *ex contractu* or *ex delicto,* in any state where legal process can be had. . . . In transitory actions, foreign private corporations, like natural persons, may be sued anywhere where the court can obtain jurisdiction of the corporation either by legal service of process or its appearance by attorney.'' Whether Wallace was a citizen of or resident in Mississippi nowhere appears in the reported case, and that fact must have been thought by the court to be wholly immaterial to a proper determination of the question of the amenability of a foreign corporation, for a wrong done in a foreign state, to the jurisdiction of our courts.

This same question was again presented to and considered

by this court in the case of *Chicago, St. Louis & New Orleans Railroad Co.* v. *Doyle,* 60 Miss., 977. This was an action brought against a foreign corporation for an injury in a foreign state, and recovery sought under the statutes of Tennessee, the state where the injury occurred. Campbell, C. J., in delivering the opinion of the court, used this language: "The right of action for damages for killing a husband, by the statute of Tennessee, may be asserted in the courts of this state because of the coincidence of the statutes of the two states on this point, and, independently of this, because a right of action created by the statute of another state, of a transitory nature, may be enforced here when it does not conflict with the public policy of this state to permit its enforcement." In this case, too, it nowhere appears that Mrs. Doyle was a citizen of or resident in this state, and that was treated by the court as immaterial. The jurisdiction of our courts in such cases was placed upon the broad ground that a right of action created by the statute of another state, if of a transitory nature, may be enforced in the courts of this state if not in conflict with our public policy.

Again, in the case of *Illinois Central Railroad Co.* v. *William Crudup, Admr.*, 63 Miss., 291, this question was considered and decided. The facts were that George A. Crudup, an unmarried son of William Crudup, administrator, was fatally injured in a collision of trains in Tennessee. The father of the young man thus fatally injured was, by the statutes of Tennessee, sole distributee and next of kin. The father took out letters of administration upon the estate of his son in this state, and brought his action to recover the damages sustained by his son, and for damages which he sustained as next of kin. Cooper, C. J., delivered the opinion of the court, and said: "It is contended by appellant that suit cannot be brought in this state by an administrator appointed here, because, as is said, the statute of Tennessee cannot operate extraterritorially, and cannot, therefore, confer a right upon an officer

appointed by the courts of this state, and that our statutes giving actions under similar circumstances do not recognize the administrator as the proper party to sue. The proposition contended for is sustained by the courts of Ohio, Massachusetts, and Kansas. But the supreme courts of the United States, of Minnesota, New York, and Kentucky hold the contrary view, and, as we think, with better reason." And the jurisdiction of our courts was sustained, and the right given by the law of Tennessee held enforceable in our courts even though that law was unlike our own. Here, too, the record does not disclose the residence of the administrator who brought that suit, and counsel for appellant are mistaken when they assert that the administrator in that case was a resident of Montgomery county, Mississippi. The right to resort to our courts was not based upon the plaintiff's citizenship or residence, but upon the high ground of affording a remedy in our courts for a right of action created by the law of a sister state.

In the still later case of *McMaster* v. *Illinois Central Railroad Co.*, 65 Miss., 764, the facts were that a son of Mrs. McMaster, the plaintiff, was killed by the negligent running of a train of cars of a foreign corporation in the State of Louisiana, and the question of jurisdiction was not at all referred to by counsel, and, of course, not adverted to by the court. The conclusion which we draw from this significant silence is, that the able counsel in that case for the railroad, who were also counsel for the railroad in the Wallace, Doyle, and Crudup cases, *supra*, had concluded that it was idle to longer "kick against the pricks," and, recognizing the rule in question as at last thoroughly established in this state, wisely forbore the renewal of a hopeless contest.

To the cases referred to by Cooper, C. J., in delivering the opinion of the court in Crudup's case, as holding the view supported by better reason, may now be added many others. Many of the authorities are collected in the case of *Burns, Admr.*, v. *Grand Rapids, etc., Railroad Co.*, 113 Ind., 169.

We content ourselves by reference specially to the cases of *Knight* v. *West Jersey Railroad Co.*, 108 Pa. St., 250, and *Eingartner* v. *Illinois Steel Co.* (Wis., decided October, 1896), 34 L. R. A., 503.

Said the supreme court of Pennsylvania in the former case: "We think the weight of recent and better considered adjudications in this country decidedly favors the application of the same rule to all transitory actions for injuries to persons or property, whether recognized by the common law or created by statute to meet new exigencies of modern life, unless such statute is contrary to the policy of the laws of the state where the action is brought. The claim of comity on which the rule is founded, is as urgent in the one case as the other. . . . As a general rule, neither citizenship nor residence is requisite to entitle a person to bring suit in Pennsylvania. A court having jurisdiction of the subject may acquire jurisdiction of the person by lawful service of its process. If a defendant were not liable to answer in a civil action in any state where he may be found, he could easily evade service of process. A preliminary inquiry respecting the citizenship or residence of the parties could not advantage the public." This very satisfactory reasoning applies perfectly to the case now before us; for, in Mississippi also, "as a general rule, neither citizenship nor residence is requisite to entitle a person to bring suit" in our courts.

In the latter of the two cases just hereinbefore referred to by us, that of *Eingartner* v. *Illinois Steel Co.*, 34 L. R. A., 503, the identical question pressed upon us was urged upon the Wisconsin supreme court. Winslow, J., who delivered the opinion of the court in that case, said this question arises, viz.: "Whether the court could, in its discretion, dismiss the case because the parties were both residents of the State of Illinois, and because the cause of action arose in the State of Illinois, jurisdiction of the person having been obtained within this state," and the court proceeds to answer the question in the

negative.    To guard against any possible misconstruction, we desire to say that we think the concurring opinion of Cassaday, C. J., states the true ground for the conclusion reached by the court in Eingartner's case.

Independently of all adjudications on this subject, however, jurisdiction of the present case was properly taken by the court below under a positive statute of this state.    Code of 1892, § 849 (which is found in our former codes of 1880, 1871 and 1857, though not called to the attention of this court by counsel in any of our former cases in which this question was considered), is in these words, viz.:

"849.  *Of foreign corporations.*—Corporations which exist by the laws of any other state of the union, by the acts of congress, or the laws of any foreign state, may sue in this state by their corporate names, and they shall also be liable to be sued or proceeded against, by attachment or otherwise, as individual nonresident debtors may be sued or proceeded against," etc.

By this statute our courts are thrown wide open to foreign corporations, and they are made liable to suit just as individual nonresidents are.    They may be proceeded against by attachment, in proper cases, just as individual nonresidents are liable to be proceeded against, or, if legal process can be served on them in this state, they may be sued in any other appropriate form of action, just as individual nonresidents who may come into this state and be legally served with process may be sued in any appropriate action.    The statute is so brief, plain and simple that it bears its meaning on its face and carries its own interpretation in its own language.    We are of opinion that the demurrer to the plea to the jurisdiction was properly sustained.

We now proceed to consider the law of the liability of the appellant in the present case.    We need hardly say that the law of the State of Illinois is that to which we must look to ascertain whether a cause of action is shown and to determine

the extent and measure of the recovery sought, if appellee was entitled to recover at all.    We do not understand that counsel for appellee make any dissent whatever to this proposition. It must be conceded, further, that the Pullman Palace Car Company is not technically a common carrier in the State of Illinois.    Our constitution has wisely declared all sleeping car companies common carriers, but such is not the law of Illinois. In Illinois, as in many other states, sleeping car companies are regarded as nondescript corporations *sui generis*.    By these authorities they are said to be neither common carriers nor innkeepers.    And yet they bear some marked resemblance to both. They are under the duty of not only furnishing seats in their cars to all proper persons applying therefor, but they are also under obligation, in all proper cases and to the extent of their ability and capacity, to furnish sleeping accommodations and food to the traveling public, for proper compensation.    They, therefore, seem to possess some of the characteristics of innkeepers. And they seem to be *quasi* common carriers.    They own and use railway cars, affording many comforts, conveniences and luxuries unknown to first-class ordinary cars of railroad companies, and these cars are to be used in the transportation of passengers from point to point, and the general traveling public is invited to become patrons of the company owning and using these luxurious coaches.    The company is in some sense engaged in transportation, and its business is with the general public.    It is unlike the private carrier, who may select his own customers, for it must take all who are proper persons, and who pay the demanded fare.    So, though not technically a common carrier in Illinois, it bears marked resemblance to the common carrier, and must be held to the performance of its appropriate duties in its business intercourse with the traveling public.    See the well-considered opinion on this subject in the Illinois case of *Nevin* v. *Pullman Palace Car Co.*, 106 Ill., 222. Giving these obsevations, which are thought to be just, their due weight, let us consider as briefly as possible the liability of

the appellant under the law of Illinois, on the case made herein by the appellee's evidence, which the jury has accepted as true. That the master in Illinois is liable in compensatory damages for the wrongdoing of his servant committed while engaged in the master's business and in the scope of his employment, is not disputed. The contention of counsel for appellant is that, under the law of Illinois, vindictive damages are not recoverable against the master in such cases, unless it is further made to appear that the master directed, participated in or ratified the wanton and malicious act of his servant. It is argued that vindictive damages are in their nature penal, and that no one should be held liable to punishment unless the act complained of is his own act, made so by his authorization or ratification of it when committed by the servant, and that it is illogical for the courts to do anything punitive in character unless the master is directly and personally responsible for the very act complained of. The sufficient answer to this contention is that the judge-made law of punitive damages is not the result of logic, but of public necessity, as text writers and courts have repeatedly shown. If corporations—artificial beings who can act only through agents and servants in their varied and multitudinous and constantly recurring business dealings with the public—can never be held liable in punitive damages for the acts of their servants unless expressly authorized by them, or unless expressly ratified by them, no matter how gross and outrageous the wrongful act of the servant, we feel perfectly safe in declaring that no recovery for more than mere compensatory damages, will ever again be awarded against corporations. Corporations never expressly authorize their servants to beat or insult or outrage those having business relations with them, and they rarely ratify such conduct. Having, by the constitution of their being, to act solely by agents or servants, they must, as matter of sound public policy, be held liable for all the acts of their agents and servants who commit wrongs while performing the master's business and in

the scope of their employment, and this to the extent of liability for punitive damages in proper cases. This, as we understand the utterances of the supreme court of Illinois, is the settled law of that state.

The counsel for appellant place great reliance upon the decision of the supreme court of the United States in the case of *Lake Shore & Michigan Ry. Co.* v. *Prentice*, 147 U. S., 101, and that case is apparently authority for appellant's contention on this point. The gist of the decision in that case is concisely stated in its syllabus, and is in these words: "A railroad corporation is not liable to exemplary or punitive damages for an illegal, wanton, and oppressive arrest of a passenger by the conductor of one of its trains, which it has in no way authorized or ratified."

That case was brought in the circuit court of the United States for the northern district of Illinois, by Prentice, for the recovery of damages for the wrongful acts of the railroad's conductor, and the facts disclose a most outrageous wrong done Prentice by the conductor in charge of the train, while engaged in the company's business and within the scope of the conductor's employment. Yet, as we have seen, the United States supreme court held the railroad company not liable for punitive damages, because it had not authorized the conductor's shameful conduct nor ratified it afterwards. In the opinion of the court, reference is made to three Illinois decisions as support for the ruling of the United States supreme court. But a critical examination of those cases will demonstrate that the supreme court of the United States not only misconceived the views of the Illinois supreme court in those cases, but overlooked the many other Illinois cases which distinctly hold the contrary. The cases cited by the supreme court of the United States in support of its holding that authorization or ratification by the principal of the wrongful act of the agent or servant is a prerequisite to recovery of punitive damages, are *Grand et al.* v. *Van Vleck*, 69 Ill., 478; *Becker* v. *Dupree*, 75 Ill., 167;

and *Rosenkrans et al.* v. *Barker*, 115 Ill., 331, and, in our opinion, are not in point and do not support the position of the United States supreme court.    We think our opinion will be abundantly shown to be correct by an examination of the cases themselves.    They are all cases in which punitive damages were sought to be recovered against a private person on account of the act of an agent charged with a single specific duty, in cases where the agent, without any authority, did that which he was not directed to do.

On the other hand, the supreme court of Illinois has distinctly held, with courts elsewhere, in the case of the *Singer Mfg. Co.* v. *Holdfodt*, 86 Ill., 455, that "a corporation may be liable to vindictive damages for the wrongful act of its agent, perpetrated while ostensibly discharging duties within the scope of the corporate purposes," as shown by the syllabus.    Said the court, page 459: " It is contended that appellant, being a corporation, cannot be made to respond in vindictive damages unless the wrongful act was authorized or approved by the corporation.    This is not in accordance with the ruling of this court.    Ever since the decision in *St. Louis, Alton & Chicago Railroad* v. *Dalby*, 19 Ill., 353, it has been regarded as settled law that if the wrongful act of the agent is perpetrated while ostensibly discharging duties within the scope of the corporate purposes, the corporation may be liable to vindictive damages, and that a person openly and notoriously exercising the functions of a particular agency of a corporation, will be presumed to have sufficient authority from the corporation so to act."

In the case of *Toledo, Wabash & Western Railway Co.* v. *Harmon*, 75 Ill., 298, the Illinois court said, on this point: " It is, however, contended that if the engine driver did the act wantonly or wilfully, it was outside of his authority, and, hence, the company is not liable for the damages resulting from the misconduct of the engineer.    He was their servant, was engaged in the performance of the duty assigned to him, and if,

while so engaged, he used the engine put into his possession and under his control, to accomplish the wanton or wilful act complained of, why should not the company be held liable? It is said that he was not employed for that purpose, nor directed to perform the act; and it is equally true that they do not employ engineers to inflict injuries through negligence or incompetency, and yet these bodies are held liable for such acts of their servants." And this strong language was employed in a vindictive damages suit.

Many other Illinois cases might be cited to show that direct authorization or express ratification of the servant's wilful or malicious act by his master is not prerequisite to the imposition of punitive damages upon the master, in proper cases, but repetition is burdensome and unnecessary.  There is one more case which it will be profitable to notice—that of *The Pullman Palace Car Co.* v. *Reed*, 75 Ill., 125.  For brevity's sake we quote from the syllabus: "Where the expulsion of a passenger from a sleeping car is done under a mistaken sense of duty, and the facts do not show it was done wilfully, maliciously or wantonly, so as to justify the imposition of exemplary damages, the damages awarded should, in some degree, be proportionate to the magnitude and character of the wrong actually done."  Here is a clear recognition of the true rule on this subject, and announced in a case where appellant here was appellant there.  It would appear to be a vain thing to look further into Illinois reports to ascertain what the law of appellant's liability is in such cases as the one before us.

But, if the rule contended for by appellant's counsel were the true rule, the appellant would not be protected by it, for there was virtually ratification of the wanton assault of the porter.  He was not discharged because of any disavowal of his act, but under a general rule of the company, by which every servant of the company who was so unfortunate as to have a personal difficulty with a passenger, whether necessarily or unnecessarily, rightfully or wrongfully, was required to

leave the service of the company—a rule as unjust as heartless
in those cases where the difficulty was unavoidable.    Not only
was there no disavowal in the discharge of the porter, but the
company has made strenuous effort to prove that the act of its
servant was neither wilful and wanton, nor even improper and
wrongful; and to the vicious assault on the person of appellee,
the company, on trial below, made an unwarranted and violent
attack upon the conduct and character of appellee, and all this
after the company knew, from its own conductor's report of
the porter's assault, what the facts were connected with that
assault.    So, if the rule thought by learned counsel for appel-
lant were the true one, the appellant's ratification of its serv-
ant's act might fairly be said to be clearly shown.

Along this line of thought it is becoming now to say that, look-
ing at the Illinois cases already cited and quoted from, it is
clear that, under the Illinois law, the porter who made the
assault upon appellee was at that time engaged in the company's
business, and was acting within the scope of his employment.
And if he was not, it is difficult to imagine a case where a serv-
ant, committing a wanton and wilful wrong, could ever be said
to be acting within the scope of his employment.    He was the
waiter, charged with the duty of attending the calls of passen-
gers and of serving food; he did go into the smoking com-
partment in answer to repeated calls for his attendance; and
he did make this brutal assault in the course of the interview
had with him by appellee and his traveling companion, Hen-
derson, in their effort to have food supplied appellee.    In ad-
dition to the Illinois cases already referred to, see *Chicago,
Burlington & Quincy Railroad Co.* v. *Sykes, Admx.*, 96 Ill.,
162, in which it is held that though the wrongful act com-
plained of may be said to be outside of and beyond the duty of
the servant, still, unless it was disconnected from the business
of the company, the company was liable, because the servant
was acting within the scope of his employment.

. The second and third assignment of errors may be consid-

ered together, as they call in question the action of the court in refusing to suppress six interrogatories propounded by appellee to appellant and the answers thereto, and in permitting this evidence to go to the jury. These questions were propounded with the view of showing the financial condition of the appellant, as punitive damages were sought to be recovered, and the case was one which, on its facts, was peculiarly for the determination of the jury. The counsel for appellant do not deny the general rule of law that the wealth or pecuniary condition of a defendant may be shown with a view to enabling the jury to inflict proper damages by way of punishment. Indeed, this is well settled both by our own reports and by those of Illinois, as well as generally by text writers and courts of last resort. See Sedgwick on Damages, vol. 1, sec. 385, and the cases there cited. See, also, on this point, *Smith* v. *Wanderlich,* 70 Ill., 426. The specific objection urged by appellant's counsel to this action of the court below is that the course of this particular examination involved an exposure of the defendant's dealings with its stockholders, but that cannot be said to·have been the object of the method of examination adopted to inform the jury of defendant's pecuniary condition. True, the plaintiff might have asked the proper officers of the company what its actual condition was, but we see no valid objection to have this shown in another, and perhaps for plaintiff's purpose, a safer mode of bringing the financial condition of defendant to the jury's attention. We are at a loss to conjecture how it was impertinent and incompetent to ask defendant: 1. The entire paid-up capital stock of the company; 2. What its liabilities were; 3. What are the assets of the company? 4. What was the surplus of the company over and above liabilities? 5. What dividends had been paid stockholders for five years past, and how they were paid. The result of these few questions was to see what the real pecuniary condition of the company was, and the course taken to that end was both simple and natural, and was, as it occurs to us, unobjectionable.

The eighth assignment of error is to the effect that the trial court permitted the counsel for appellee to indulge in some improper remarks in the concluding argument. It is unnecessary to set out these remarks in this opinion. By the bill of exceptions we are advised that "during all the argument of counsel for plaintiff [including, of course, the objectionable remarks], defendant's counsel was present and heard the same, and made no objection thereto; did not ask the court to stop counsel for plaintiff, nor inform the jury that such argument was improper; hence, the court took no notice of the same. The remarks of the counsel were not taken down and presented to the judge during the term of the court, but were presented to him nearly thirty days later. It being now impossible to give the exact words used during the argument, I [the trial judge] have given the substance of same, as near as I can remember, not claiming that it is absolutely correct."

This assignment, on the facts thus disclosed, must fail, under the authority of the case of *Cartwright* v. *The State*, 71 Miss., 82, unless we shall be satisfied that there was a most extreme and intolerable abuse of the advocate's privilege. If improper remarks are made by counsel, it is the duty of the court to interpose; but if the court fails to do so, it is the duty of opposing counsel to call the attention of the court to such impropriety, and thus have the proper corrective then and there applied. If counsel fail to thus give the trial court an opportunity to undo any wrong that may have been committed, we will not correct here, except as stated, in cases of extreme and intolerable abuse of the advocate's privilege.

Was there such abuse here? We think not. The remarks of appellant's counsel, first indulged, not unnaturally provoked the retort of appellee's counsel to which objection is now taken, and that they had a "Roland for an Oliver" was, if improper, not surprising, and we do not think it such an intolerable abuse of counsel as will authorize a reversal by us.

We content ourselves by saying that all the assignments of

error as to the court's action in giving and modifying and refusing instructions are without substantial merit. The law was fairly, not to say favorably, given for appellant in its charges, and it is without solid ground of complaint as to the instructions. We have carefully considered more than once, every charge to be found in the record, and we find no reversible error in the court's action in this particular.

The damages awarded are large, but we are not prepared to hold that, considering the circumstances of insult and outrage suffered by appellee at the hands of appellant's servant, and the serious and permanent character of the injury received, they are excessive. Every case must depend largely upon its own facts, and as there is no fixed standard for measuring either compensatory or vindictive damages, in cases like this one, the amount of such damages must be left, in great measure, to the good sense and sound judgment of the jury, under proper instructions from the court. We repeat, on all the facts of the case, we do not feel authorized to disturb the judgment because of its excessiveness.

*Affirmed.*