Lawrence SCHREIBER, Plaintiff,

v.

ALLIS–CHALMERS CORPORATION, Defendant.

No. 77–4192.

United States District Court, D. Kansas.

March 24, 1978.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This is a products liability action which comes before the Court on the motion of defendant for summary judgment on the ground plaintiff's claim is barred by the applicable statute of limitations. Oral argument has been heard on the motion, and the Court is prepared to rule.

This case raises difficult questions of jurisdictional theory and conflict of laws. Thus we will recount the procedural history of the case at some length. The complaint initiating this case was filed June 16, 1977, in the Southern District of Mississippi. It alleges that plaintiff is a resident of Soldier, Kansas, who was injured near Soldier, Kansas by a product manufactured by defendant. Defendant is a Delaware corporation which has its principal business headquarters in Wisconsin. The alleged injury took place June 22, 1971. At this juncture it is important to note that plaintiff's claim would have been barred by the applicable statutes of limitation had the action been brought in any venue of "residence" or in the district where the claim arose, the District of Kansas.

Mississippi, however, has six-year statutes of limitation governing tort and warranty actions. The action was filed in Mississippi six days before the six-year period had run. Service was had on defendant's registered agent in Mississippi pursuant to Sections 79–1–27 and 79–1–29, Miss.Code 1972, which provide for such service upon any corporation "found doing business" in Mississippi, "whether the cause of action accrued in this state or not."

On July 5, 1977, defendant Allis-Chalmers moved for a change of venue pursuant to 28 U.S.C. § 1404. Defendant alleged generally the lack of any connection between the State of Mississippi and the cause of action or any party thereto, and requested transfer to the district of Kansas. On the same date defendant answered, challenging the jurisdiction of the Mississippi court and pleading various affirmative defenses.

William Larry Latham, Jackson, Miss., R. Daniel Lykins, Topeka, Kan., for plaintiff.

Heber Ladner, Jr., Angelos J. Dorizas, Jackson, Miss., Frank Saunders, Jr., Overland Park, Kan., for defendant.

On July 26, 1977, the motion for change of venue was overruled and denied by the district court. On August 4, defendant requested permission to take an interlocutory appeal from the denial of transfer, pursuant to 28 U.S.C. § 1292(b). This too was denied August 23 and discovery began. Defendant then filed a petition with the Fifth Circuit Court of Appeals for a writ of mandamus to force the requested transfer. This was granted by minute order September 13; the Mississippi district court was thus ordered to transfer the case to the District of Kansas. Copies of the Fifth Circuit mandate were filed in the Southern District of Mississippi September 15. On September 29 defendant filed a motion to have the district court comply with the appellate mandate and cause the case file to be sent to the District of Kansas. The motion was granted the same day, and all relevant materials were received by the clerk of this court October 3, 1977.

Upon transfer defendant made clear its intent to rely upon the Kansas statutes of limitation as a bar to the action and secured an order staying discovery pending resolution of the issue. Defendant filed an amended answer setting up the Kansas limitations statutes, and filed the present motion for summary judgment. Defendant's argument is bifurcated: first, it challenges the existence of jurisdiction to adjudicate the case in Mississippi. Of course, if Mississippi could not have assumed jurisdiction, it could not have applied its statutes of limitation to plaintiff's claim. Defendant's second contention is that, even if jurisdiction were properly assumed by Mississippi, that state would nevertheless have applied the shorter Kansas statutes of limitation, K.S.A. §§ 60–513 and 84–2–725, and would have dismissed the action. Plaintiff argues that Mississippi would have assumed personal jurisdiction over defendant, and would have applied its six-year statutes, Sections 75–2–725 and 15–1–49, Miss.Code 1972.

We must preface our analysis of the issues raised by the present motion with a frank admission of our antipathy for plaintiff's position. The necessary result of plaintiff's argument, as it will be discussed below, is that a federal district court sitting in Kansas must entertain a suit which would have been dismissed out of hand had it been brought here, or brought in a Kansas state court and removed by the defendant. We are aware that this case appears on our docket only through the unilateral act of defendant in securing transfer; yet while this may in legal terms merely bestow upon us the functions of a Mississippi federal court sitting elsewhere, the practical effect of the ruling plaintiff urges is the defeat of the legislative policy of Kansas, as expressed in K.S.A. §§ 60–513 and 84–2–725, through utilization of the laws of a sister state apparently unconcerned with effecting such interference. Were this an isolated instance, a "fluke of the law," our concern would be limited to the interests of the defendant in its attempt to avoid all liability. Yet we are cognizant that plaintiff's counsel has employed similar arguments, and has succeeded in resurrecting a claim "stale" in Kansas, in at least one other case—*Steele v. G. D. Searle,* the various reported orders in which will be discussed below. This fact, and the ready availability of transfer as was effected in this case, raises the grim possibility that many such cases may appear on the dockets of Kansas federal courts, and that the effect of the Kansas limitations statutes may, by appropriate procedural maneuvering, be avoided time and again. It may fairly be called an aberration when the principles developed to accommodate the rule of *Erie R.R. Co. v. Thompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), intended to avoid the evils of forum-shopping, provide a link in plaintiff's argument that he has an unqualified right to forum-shop for an outcome favorable to him. On the other hand, some of the principles underpinning plaintiff's argument undoubtedly have salutory effects in the vast majority of cases, and perhaps should not be rejected for that reason. With this consideration of conflicting policies in mind, we proceed to examine the legal arguments of the parties before us.

## I. THE LAW TO BE APPLIED: *KLAXON* AND THE EFFECT OF CHANGE OF VENUE

Plaintiff's argument for the application of the Mississippi statutes of limitation in this court builds upon two hotly contested assumptions: that a hypothetical state court in Mississippi would have had jurisdiction to entertain this action originally, and that such a court would automatically apply its own limitations statutes to any case brought in Mississippi. Both of these points will be dealt with in detail below; for purposes of this section, however, we will assume both are true statements of the law. The argument proceeds that the process and personal jurisdiction of the federal district court in Mississippi is coextensive with that of the hypothetical state court, under general principles of federal diversity jurisdiction. With this there can be no quarrel, for we note that the citizenship of the parties and the amount claimed in apparent good faith by the plaintiff satisfies the statutory prerequisites for federal jurisdiction under 28 U.S.C. § 1332; the statutory requirements for venue are met under 28 U.S.C. § 1391(a) and the special "corporate venue" provisions of 28 U.S.C. § 1391(c).

The argument proceeds that Mississippi state law would have bound the Mississippi federal court under the *Erie* doctrine, as interpreted in *Klaxon v. Stentor Elec. Mfg. Co., Inc.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). *Klaxon* commands that a federal court apply the choice-of-law rules of the state in which it sits; thus the Mississippi federal court would have been bound by Mississippi choice-of-law rules with regard to statutes of limitation. Defendant does not dispute this. Although plaintiff contends Mississippi treats limitations statutes as "procedural" for choice-of-laws purposes, it is painfully evident that such statutes can be a factor in forum selection, and thus are not mere "housekeeping" rules exempt from *Erie* under *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). While *Klaxon* may lead to the application of the law of a state which has no interest in an action, and hence to forum-shopping between states

(the present case is a perfect example), attempts to depart from the strict *Klaxon* rule have not met with approval from the Supreme Court. *Cf. Day & Zimmerman, Inc., v. Challoner,* 423 U.S. 3, 96 S.Ct. 167, 46 L.Ed.2d 3 (1975). Thus if a Mississippi state court would apply the Mississippi statutes of limitation to this action, a Mississippi federal court must follow this practice.

Plaintiff proceeds to argue that Mississippi's presumed application of its own statutes of limitation to this action must be observed by this court following a transfer at the request of a defendant under 28 U.S.C. § 1404(a). For this proposition plaintiff relies upon *Van Dusen v. Barrack,* 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) and the rule announced therein that "the transferee court must be obligated to apply the state law that would have been applied had there been no change of venue." *Id.,* 376 U.S. at 639, 84 S.Ct. at 821. This means a § 1404 transfer will effect "a change in courtrooms, but not a change of law." Wright, Law of Federal Courts § 44 at 187 (3d ed. 1976) [hereinafter Wright].

■■■ Defendant, however, points to the following qualifying language found in the *Van Dusen* opinion:

> In so ruling, however, we do not and need not consider whether in all cases § 1404(a) would require the application of the law of the transferor as opposed to the transferee, State. We do not attempt to determine whether, for example, the same considerations would govern if a plaintiff sought transfer under § 1404(a) or if it was contended that the transferor state would simply have dismissed the action on the ground of forum non conveniens.

*Id.,* 376 U.S. at 639–40, 84 S.Ct. at 821. The first alternative, referring as it does to a transfer secured by a *plaintiff,* has no application to this case; it merely refers to a situation where a plaintiff attempts to use the transfer mechanism as a forum-shopping device. For example, a plaintiff should not be able to transfer a case into another forum to secure the benefits of a

longer statute of limitations. *Kaiser v. Mayo Clinic,* 260 F.Supp. 900 (D.Minn.1966); *Leyden v. Excello Corp.,* 188 F.Supp. 396 (D.N.J.1960). See also, *Headrick v. Atchison, T. & S. F. Ry. Co.,* 182 F.2d 305 (10th Cir. 1950); Note, *Choice of Law in Federal Court after Transfer of Venue,* 63 Cornell L.Rev. 149, 154–58 (1977) [hereinafter Note, *Transfer of Venue*]; Weintraub, *The Erie Doctrine and State Conflict of Laws Rules,* 39 Ill.L.J. 228, 258 (1964). The comment with regard to *forum non conveniens* dismissal is a curiosity, since that doctrine has been largely superseded in federal courts by the statutory transfer provisions themselves. See *Mars, Inc. v. Standard Brands, Inc.,* 386 F.Supp. 1201 (S.D.N.Y.1974); 15 Wright & Miller, Federal Practice and Procedure, *Civil,* § 3828. Perhaps the court was referring to an *Erie*-type investigation: would a state court have dismissed the action on *forum non conveniens* grounds had it been brought there? Yet we have been unable to find a Mississippi state decision adopting the *forum non conveniens* doctrine, and in any event application of the doctrine depends upon the availability of a suitable alternative forum. The doctrine will not be invoked "if the plaintiff's cause of action would elsewhere be barred by the statute of limitations." Restatement, *Conflicts* 2d, § 84, comment (c). Thus, we believe the passage quoted above can be of little comfort to defendant.

■■■ This is not to say we have no qualms concerning the application of the *Van Dusen* rule in the instant case, since plaintiff's arguments lead to the application of a foreign statute of limitations to a case strongly identified with Kansas interests. See Currie, *Change of Venue and the Conflict of Laws: A Retraction,* 27 U.Chi.L. Rev. 341, 350 (1960). We have undertaken some investigation of the language of § 1404 which allows transfer only to a jurisdiction where the action "might have been brought." Of course, had the present case been brought in this court, it would have been subject to dismissal on limitations grounds. It may be argued by analogy to *Hoffman v. Blaski,* 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960), that the "might have been brought" determination is made with reference to the situation that existed at the time the suit was commenced, and that plaintiff did not have an unqualified right to bring suit in Kansas at the time this action was filed in Mississippi. The Supreme Court in *Hoffman* would not allow a movant's implied waiver of jurisdictional defects to vest jurisdiction in a court where the action could not have been brought prior to the motion for transfer. The analogy does not hold, however; a statute of limitations is an affirmative defense which must be raised by a defendant, and cannot be the object of a court's *sua sponte* investigation. Further, the court in *Hoffman* acted to prevent forum-shopping by the defendant. Wright, supra, § 44 at 189. The same end would not be served by a like analysis in the present case, since no "waiver" of a limitations defense can be inferred from a motion to transfer, and the goal of avoidance of forum-shopping by a defendant is best served by the application of the *Van Dusen* rule as plaintiff requests. We must conclude that the "might have been brought" language of § 1404(a), in the present context, refers chiefly to questions of venue and jurisdiction in the transferee court; it concerns a plaintiff's right to institute the action originally, and not possible defense which may be interposed by a defendant, such as a statute of limitations. *Greve v. Gibraltar Enterprises,* 85 F.Supp. 410 (D.N.M.1949). Cases which consider the subject generally conclude that a transferee court must apply the statute of limitations which would have been applied had there been no change of venue. *Sargent v. Genesco, Inc.,* 492 F.2d 750 (5th Cir. 1974); *Schenk v. Piper Aircraft Corp.,* 377 F.Supp. 477 (W.D.Pa.1974); *Morganstern v. Marriott-Hot Shoppes, Inc.,* 270 F.Supp. 75 (D.Md.1967); *Kaiser v. Mayo Clinic,* 260 F.Supp. 900 (D.Minn.1966). The rule may be otherwise, however, when a plaintiff originally files his action in an improper forum, one in which venue is improper or the defendant is not subject to personal jurisdiction. See, *Carson v. U-Haul Co.,* 434 F.2d 916 (6th Cir. 1970); *Bealle v. Nyden's*

*Inc.,* 245 F.Supp. 86 (D.Conn.1965); *Viaggio v. Field,* 177 F.Supp. 643 (D.Md.1959). In such a situation it has been suggested that the only proper statute of limitations to apply is that of the transferee forum:

> [T]he notion that a plaintiff who commences an action in federal court acquires rights to the application of certain state law is unpersuasive in a case where the plaintiff has chosen a forum that is improper . . . . .

Note, *Transfer of Venue,* supra, at 160 n.57. We need not concern ourselves overmuch with the propriety of this suggestion, however, for if personal jurisdiction is lacking over defendant in the case before us, it will matter little to plaintiff whether the action is dismissed based on the statute of limitations and the suggested exception to *Van Dusen,* or based on a strict application of *Van Dusen* with resultant dismissal on purely jurisdictional grounds.

One further comment made in *Van Dusen* deserves mention. In a footnote to the passage cited by defendant, the Court reserves the possibility that the application of transferor-state law may be subject to constitutional limitations. *Van Dusen,* supra, 376 U.S. at 639 n.41, 84 S.Ct. 805. The possible implications of this cryptic remark will be discussed below. It must suffice at this point to say that, in the absence of countervailing constitutional considerations, we intend to follow the rationale of *Van Dusen* in the case before us, and decide the case as would a federal district court sitting in Mississippi. Under *Klaxon,* this imports a decision consistent with the law applied by the state courts of Mississippi.

## II. PERSONAL JURISDICTION IN MISSISSIPPI

As we have noted, defendant's motion concentrates chiefly upon an asserted lack of personal jurisdiction in Mississippi and the question whether, under Mississippi conflicts law, a Mississippi court would apply its longer statutes of limitation to the present case. We now examine the propriety of an assumption of personal jurisdiction over defendant by the courts of Mississippi.

This necessitates a bifurcated analysis; first, the state must have statutorily authorized assumption of personal jurisdiction in the case, and second, such assumption of jurisdiction must not offend constitutional proscriptions. *Time, Inc. v. Manning,* 366 F.2d 690 (5th Cir. 1966); *Sanders Associates, Inc. v. Galion Iron Works & Mfg. Co.,* 304 F.2d 915 (1st Cir. 1962).

Defendant's argument in opposition to the assumption of jurisdiction directs itself to the interpretation of Mississippi statutory jurisdictional provisions. Specifically, defendant claims that the act or omission giving rise to the cause of action must occur within the state of Mississippi if certain Mississippi statutes are to confer personal jurisdiction over a defendant. Defendant has submitted an uncontroverted affidavit in which it is claimed no agricultural equipment of the type here in issue has ever been manufactured in whole or part, designed, or tested in Mississippi. Since the injury was not sustained in Mississippi either, it can truly be said that none of the events giving rise to the instant action occurred within the territorial boundaries of Mississippi.

Plaintiff, on the other hand, argues that no such connection with the forum is necessary to sustain jurisdiction under the relevant Mississippi statute. Plaintiff has submitted certification from the Secretary of State of Mississippi that defendant has complied with the relevant law and has obtained a certificate of authority to do business in Mississippi. Defendant has appointed a registered agent for service of process in the state. In so qualifying to do business in Mississippi, plaintiff asserts defendant became "subject to the same duties, restrictions, penalties and liabilities now or hereafter imposed upon a domestic corporation of like character." Section 79–3–213, Miss.Code 1972. It is not disputed that defendant was so qualified at the time the injury here sued upon occurred.

Plaintiff then points the court to Section 79–1–27, Miss.Code 1972, which reads in full:

> Any corporation claiming existence under the laws of any other state or any other

country foreign to the United States, found doing business in this state, shall be subject to suit here to the same extent that corporations of this state are, whether the cause of action accrued in this state or not.

Service in this case was effected upon both defendant's appointed registered agent, the C.T. Corporation System, and upon an actual agent of defendant's Mississippi plant. Either method is permissible under Mississippi law; see Section 79–1–29, Miss.Code 1972.

It is unquestionable that, on its face, the Mississippi statute provides for an assumption of jurisdiction in cases such as the one before us. At the hearing plaintiff repeatedly referred to defendant's "actual presence" in Mississippi and the fact that (unlike Mississippi's long-arm statute, which requires some connection between the cause of action and the forum) § 79–1–27 applies to any corporation found present in Mississippi regardless of where the operative events giving rise to the claim occurred. We might note that, in addition to plaintiff's claim of "presence," an element of "implied consent" to jurisdiction is extracted from corporations wishing to register in Mississippi. See Miss.Code 1972, § 79–3–213.

Plaintiff cites to the court cases applying § 79–1–27, or its precursors, to actions between nonresidents of Mississippi deriving from claims arising outside Mississippi. *Tri-State Transit Co. of La. v. Mondy,* 194 Miss. 714, 12 So.2d 920 (1943); *Vicksburg, S. & P. R. Co. v. Forcheimer,* 113 Miss. 531, 74 So. 418 (1917); *Pullman Palace Car Co. v. Lawrence,* 74 Miss. 782, 22 So. 53 (1897). In 1962 the Mississippi Supreme Court upheld such an application of Mississippi jurisdiction in *S. & W. Const. Co. v. Douglas,* 244 Miss. 498, 142 So.2d 33 (1962). In that case a Tennessee plaintiff sued a Tennessee domestic corporation for injuries sustained in an accident in Tennessee. Defendant corporation had qualified to do business in Mississippi prior to the date of the accident. The Mississippi court rejected a challenge to Mississippi jurisdiction in a single paragraph, simply citing such prior cases as *Forcheimer* and *Pullman, supra.*

Defendant claims *S & W Construction* and its precursors retain no vitality in Mississippi law in light of *Mladinich v. Kohn,* 250 Miss. 138, 164 So.2d 785 (1964), and *Hyde Const. Co. v. Koehring Co.,* 321 F.Supp. 1193 (S.D.Miss.1969). *Mladinich* did indeed decree that a "cause of action must arise from, or be connected with" a forum-related act of defendant, for jurisdiction to attach under the Mississippi long-arm statute. 164 So.2d at 790. Plaintiff does not dispute this, but asserts that *Mladinich* is irrelevant to the question now before us since the defendant in that case was not a corporation and the parameters of § 79–1–27 were not in issue. With this we must agree.

Defendant argues, however, that the significance of *Mladinich* lies in the fact it postdated *S & W Construction* and its "arising from" rule was extended to encompass § 79–1–27 in *Hyde Const. Co. v. Koehring Co., supra.* In that case, the Mississippi federal court discussed the precursor of Section 79–1–27 and commented that *Mladinich* "apparently negates or nullifies the last phrase of this statute" (i. e., the provision for assumption of jurisdiction "whether the cause of action accrued in this state or not"). *Hyde, supra,* 321 F.Supp. at 1206. Plaintiff counters that this must be regarded as mere dictum; the statute, plaintiff argues, would not have been applicable in any event since the defendant in *Hyde* was not "doing business" in Mississippi when the cause of action arose. We must agree that a construction of § 79–1–27 was not necessary to the decision in *Hyde* and that the offhand and concessive manner in which the comment was made does not constitute the sort of persuasive analysis a court should undertake if it is to depart from an established statutory construction. *Hyde* may signal, however, a drift away from a literal construction of § 79–1–27. We are not particularly persuaded by plaintiff's reliance on *S & W Construction* for no interpretive analysis of § 79–1–27 was undertaken in that case either. The Mississip-

pi court in *S & W Construction* merely cited "controlling precedents" which themselves spoke of Mississippi's power over a corporation present or consenting to process. Yet in *Mladinich, supra*, the court noted:

In *Davis-Wood Lumber Co., Inc. v. Ladner*, 210 Miss. 863, 50 So.2d 615 (1951), we recognized that *International Shoe* [*International Shoe Co. v. Washington*, 326 U.S. 310 [66 S.Ct. 154, 90 L.Ed. 95] (1945)] in effect had discarded the fictions of presence within the state and consent to process.

Id., 164 So.2d at 789. See also, *Century Buick Corp. of America v. Carroll*, 247 Miss. 514, 153 So.2d 683 (1964): "The 'presence' and 'implied consent' theories, generally fictional, were substantially superseded in *International Shoe* . . . ." Although *Davis, Century Brick*, and *Mladinich* were essentially "long-arm" cases, there is no discussion to be found in *S & W Construction* of the distinctions between a qualified and a non-qualified corporation for jurisdictional purposes. *Hyde* certainly raises the possibility that such distinctions may be of no great moment. In the absence of more convincing precedent, however, we are unable to say, as a matter of *statutory construction*, that Mississippi would not think of applying § 79–1–27 to a cause of action arising outside its territorial borders.

If we assume the statute might be so interpreted, however, we must still examine whether a literal application of the statute might violate constitutional precepts in the case before us. Indeed, the basis for such decisions as *Mladinich* was not mere statutory construction, but rather a recognition of due process limitations upon a state's assumption of jurisdiction over nonresidents, as articulated in *International Shoe, supra*. There can be no question that a "power" theory of jurisdiction, relying on outmoded notions of "presence" or "consent," has no place in a discussion of power to effect personal jurisdiction over a nonresident *individual* who did not act and caused no injury within the forum state. It has been suggested that the "contacts" or "fair play" analysis of *International Shoe* should be uniformly applied when *any* defendant is sued in a forum unconnected with the cause of action:

The Court [in *International Shoe*] emphasized that "the obligation which is here sued upon arose out of [the] . . . very activities" relied upon to "establish sufficient contacts or ties with the state of the forum to make it reasonable and just, according to our traditional conceptions of fair play and substantial justice, to permit the state to enforce the obligations which appellant has incurred there." This approach suggests that, absent the kind of total, close, and continuing relations to a community implied in incorporation or in the location of a head office within a state, jurisdiction over legal persons . . . should take the form of specific jurisdiction [i. e., jurisdiction over only those actions arising from activity taking place or having effect within the forum].

Von Mehren and Trautman, *Jurisdiction to Adjudicate: A Suggested Analysis*, 79 Harv.L.Rev. 1121 (1966) [hereinafter Von Mehren and Trautman, *Jurisdiction*].

Plaintiff claims "there can be no constitutional implication raised by the assumption of jurisdiction over [defendant] by Mississippi," citing *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952). In the *Perkins* case the Supreme Court allowed the state of Ohio to assume jurisdiction over a Philippine corporation, at the behest of a nonresident plaintiff, in connection with a cause of action not associated with Ohio. The following language appears on page 445, 72 S.Ct. on page 418, of the opinion:

The essence of the issue here, at the constitutional level, is a like one of general fairness to the corporation. Appropriate tests for that are discussed in *International Shoe* . . . the amount and kind of activities which must be carried on by the foreign corporation in the state of the forum so as to make it reasonable and just to subject the corporation to the jurisdiction of that state are to be determined in each case. The corporate activities of a foreign corporation which, under

state statute, make it necessary for it to secure a license and to designate a statutory agent upon whom process may be served provide a helpful but not a conclusive test. . . . On the other hand, if the same corporation carries on, in that state, other continuous and systematic activities as it did here . . . those activities are enough to make it fair and reasonable to subject that corporation in proceedings *in personam* in that state . . . .

The Restatement 2d, Conflict of Laws § 47(2) has codified the principle of *Perkins*:

> A state has power to exercise judicial jurisdiction over a foreign corporation which does business in the state with regard to causes of action that do not arise from the business done in the state if this business is so continuous and substantial as to make it reasonable for the state to exercise such jurisdiction.

Although *Perkins* does not treat qualification to do business in the forum state as a sufficient "contact" in and of itself to make a state's assumption of jurisdiction reasonable, several courts have treated *Perkins* as the announcement of a "modern due process 'presence' test" under which statutory presence alone is sufficient. See *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 413 (9th Cir. 1977) and cases therein cited. We believe this is an overbroad reading.

In *Perkins* the corporation sued had in essence moved its principal place of business to Ohio, the forum state, during the Japanese occupation of the Philippines. The "continuous and substantial" activities of the defendant in Ohio, therefore, were tantamount to principal operation in Ohio; the defendant corporation held directors' meetings and effected stock transfers from its Ohio base of operations. Thus Comment (f) to Restatement 2d, § 47(2), *supra*, notes "such jurisdiction is particularly likely to exist in situations where the corporation's principal place of business is in the State." Suit in such a forum would probably supply the "minimum contacts" to satisfy due process. We doubt, however, that *Perkins* should be interpreted to support a general "presence" theory of jurisdiction over corporations:

> [The *Perkins*] case was decided under and seems to fall clearly within the test of reasonableness, although the unavailability of a more convenient forum was a significant factor in the decision. . . . Circumstances may exist in which a suit on a cause of action unrelated to activities within the forum would make it unreasonable and therefore unconstitutional to exercise jurisdiction over the defendant.

Goodrich & Scoles, Conflict of Laws 94th ed. (1964), § 76 at 134.

> It should be noted . . . that the facts in *Perkins* were highly unusual. When sued, the defendant had its main office in the forum. Furthermore, if not amenable to suit in Ohio, it is unlikely that the defendant would be subject to suit any place while the occupation of the Philippines continued. Thus *Perkins* is not strong support for the proposition that doing business may be a generally affiliating basis for general jurisdiction.

Weintraub, Commentary on the Conflict of Laws, 108–9 (1971).

■ A reading of the Restatement's formulation of *Perkins* must take into account "the background of increasingly refined thinking about specific jurisdiction to adjudicate . . . [t]he *Perkins* case should be regarded as a decision on its exceptional facts, not as a significant reaffirmation of obsolescing notions of general jurisdiction." Von Mehren and Trautman, *Jurisdiction, supra*, at 1144. To the extent the ideas of "presence," "implied consent," and "general jurisdiction to adjudicate" derive from a "power" theory of a state's "exclusive jurisdiction and sovereignty over persons and property within its territory," *Pennoyer v. Neff*, 95 U.S. 714, 722, 24 L.Ed. 565 (1877), we believe they are conclusively declared obsolescent by *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). *Shaffer* effectively invalidates notions of jurisdiction based on a state's "power" over

property of a defendant located in the state, and declares: "All assertions of state court jurisdiction must be evaluated according to the standards set forth in *International Shoe* and its progeny." Id. at 212, 97 S.Ct. at 2584.

■ After *Shaffer*, plaintiff cannot rely solely on the asserted fact of "presence" to sustain an exercise of jurisdiction in Mississippi, for "physical presence is no longer either necessary *or sufficient* for in personam actions." Casad, *Shaffer v. Heitner: An End to Ambivalence in Jurisdiction Theory?*, 26 Kan.L.Rev. 61, 77 (emphasis supplied) [hereinafter Casad, *An End to Ambivalence*]. Rather, the nature and quality of that "presence" must be evaluated, with an eye toward the interest of Mississippi in assuming jurisdiction and providing a forum for this particular action. See *Fisher Governor Co. v. Superior Court*, 53 Cal.2d 222, 1 Cal.Rptr. 1, 347 P.2d 1, 3–4 (1959). It is true the Court in *International Shoe* refers to

> instances in which the continuous corporate operations within a state were thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities.

Id., 326 U.S. at 318, 66 S.Ct. at 159. Yet a close reading of the three cases cited for this proposition reveals they are distinguishable from the case before us. In *St. Louis S.W. Ry. Co. v. Alexander*, 227 U.S. 218, 33 S.Ct. 245, 57 L.Ed. 486 (1913), the transaction sued upon also provided the connection with the forum. *Missouri, K. & T. R.R. Co. v. Reynolds*, 255 U.S. 565, 41 S.Ct. 446, 65 L.Ed. 788 (1921) was affirmed summarily on the basis of the *St. Louis* case. Only the state case of *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 115 N.E. 915 (1917) really supports the "pure presence" concept, and in *Tauza*, the plaintiff was a resident of the forum state. In any event, we believe the language of the court in *Shaffer* imports that any assumption of jurisdiction must meet the "contacts" test of *International Shoe*, and not that obsolete exceptions to this test (such as "corporate

presence") which may have survived *International Shoe* should be preserved. *Shaffer* "proves beyond question that old jurisdictional dogma is not sacred. If century-old law on *in rem* jurisdiction can be changed, so can other rules that are believed to operate unfairly." Leflar, American Conflicts Law § 24A at 43 (3d ed. 1977) [hereinafter Leflar].

Of course, a party may consent to jurisdiction and thereafter have no grounds for objections thereto. Plaintiff cites us to Section 79–3–213, Miss.Code 1972, quoted above, and Section 79–1–23, which provides that a corporation qualifying to do business in Mississippi and appointing an agent for service of process "shall . . . be subject to all the duties, obligations, restrictions, liabilities, limits and penalties . . . imposed by the laws of this state upon similar corporations incorporated under the laws of this state." Plaintiff has stressed "consent" as a basis for sustaining jurisdiction in Mississippi, and we discuss it here because of the hint in *Shaffer* that statutory exaction of consent as a prerequisite to commercial activity in the forum may obviate further constitutional analysis. *Shaffer, supra*, 433 U.S. at 216, 97 S.Ct. 2569.

■ Consent statutes are based on the notion that a state may condition the entry of a foreign corporation on such conditions, including consent to service of process, as it feels necessary. See *Paul v. Virginia*, 75 U.S. (8 Wall.) 168, 19 L.Ed. 357 (1869). When jurisdictional thinking was based on *Pennoyer v. Neff, supra*, all states thought consent statutes necessary, since *Pennoyer* mandated that process be served within the forum's territory, and the Supreme Court held that the "consent" thus extracted sufficed to provide jurisdiction over the "consenting" corporation for actions unconnected with its activities in the forum. *Pennsylvania Fire Ins. Co. v. Gold Issue Mining and Milling Co.*, 243 U.S. 93, 37 S.Ct. 344, 61 L.Ed. 610 (1917). However, the advent of concepts of valid extraterritorial process undermined the necessity for relying upon such fictional "consent":

A principal function of the [corporate qualification] statutes was to assure the subjection of foreign corporations to the jurisdiction of local courts in actions on claims arising out of business done locally. The new long-arm statutes take care of this business more efficiently . . .

Leflar, supra, § 258 at 518.

[T]he operating principle of [consent] laws is now outdated, sustained by inertia but not by currently acceptable jurisprudence.

Walker, *Foreign Corporation Laws: The Loss of Reason*, 47 N.C.L.Rev. 1, 30 (1968). It has been suggested that the requirements of consent to process and appointment of a registered agent are only useful when the forum has no other contacts with the litigation, and in that situation may pose an unreasonable burden on interstate commerce. Walker, *Foreign Corporation Laws: A Current Account*, 47 N.C.L.Rev. 733 (1969). Of course, this presupposes that the forum has enacted a suitable long-arm statute applicable by its terms to corporations. We are aware that the Mississippi long-arm statute exempts qualified corporations. But we are here concerned with the constitutional application of whichever statute purports to confer jurisdiction over the present defendant, and our belief that such "consent" statutes as those relied upon by plaintiff must be interpreted to incorporate a "minimum contacts" test in which the defendant's activities in the forum, if they are entirely unrelated to the cause of action, play a minimal role at best. We have no doubt Mississippi can apply its "doing business" statute to many situations entirely consistent with the Due Process Clause. Yet we are not convinced such an application to the facts of the present case can be free from objection:

[C]onsent statutes . . . are a fictional outgrowth of the jurisdictional framework derived from *Pennoyer v. Neff*, a framework being rejected by the court in *Shaffer*. Under general due process principles and the minimum contacts test, such an implied consent statute should not be valid unless the requisite

contacts were found to exist. If such contacts were present . . . jurisdiction would be established, regardless of the presence or absence of a consent statute.

Comment, *The Expanded Scope of the Sufficient Minimum Contacts Standard: Shaffer v. Heitner*, 63 Iowa L.Rev. 504, 523 (1977); see *Shaffer, supra*, 433 U.S. at 227, 97 S.Ct. 2569 and n.6 (Brennan, J., concurring in part and dissenting in part).

If we reject such mechanical or quantitative evaluations of the propriety of assuming jurisdiction as "presence" and "consent," and approach our inquiry as a "question of reasonableness," *Shaffer, supra*, 433 U.S. at 204, 97 S.Ct. 2569, we believe it is obvious traditionally-accepted "contacts" are lacking in this case. Mississippi can have no particular interest in providing a forum to adjudicate the claim of a Kansas resident. See *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). The history of the transfer proceedings herein demonstrates that none of the evidence or witnesses is connected with Mississippi. *Id.*, 355 U.S. at 223–24, 78 S.Ct. 199. No showing has been made that Mississippi has the slightest regulatory interest in defendant's farm-machinery activities. *Travelers Health Ass'n. v. Virginia*, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154 (1950). And, of course, the cause of action did not arise out of defendant's local activities. *Hanson v. Denckla*, 357 U.S. 235, 251–53, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *McGee, supra*, 355 U.S. at 223, 78 S.Ct. 199; *International Shoe, supra*, 326 U.S. at 319, 66 S.Ct. 154. Plaintiff is left to rely upon the mere "substantiality" of defendant's activities in Mississippi as the sole "contact" which arguably satisfies the test of *Shaffer* and *International Shoe*.

We do not believe an assumption of jurisdiction over the present case meets the standards set forth in "*International Shoe* and its progeny," including *Perkins* and its "continuous and substantial" test. Defendant does business nationwide and even in-

ternationally. Its manufacturing activities in Mississippi are limited to the production of large "breakers" for use by electric utility companies. It is incorporated in Delaware and carries on its principal business in Wisconsin; nothing plaintiff has placed before us indicates that its activities in Mississippi are any more "continuous and substantial" than those in which it engages in any number of other states. We hold that plaintiff's attempted invocation of jurisdiction in Mississippi over the present case must fail a due process analysis. Plaintiff's interpretation of *Perkins* would lead to the ultimate result a corporation which extends its operations nationwide, and complies with state requirements for qualification to do business (thereby also submitting to taxation by the state), must pay for its success and compliance with the laws by finding itself subject to suit everywhere, at the behest of any plaintiff, for claims unconnected with its activities in the forum. No reliance on corporate "presence," or extraction of fictional "consent," can obscure the fact such a result is fundamentally unfair. Under such a theory the state with the longest statute of limitations, if it mechanically applies its statute to all suits filed in the state, becomes the standard of defendant's liability everywhere, even though it has absolutely no connection with, or interest in, the action. Although corporations by their nature may be subject to jurisdiction in cases where an individual would not, see *Shaffer, supra,* 433 U.S. at 204, n.19, 97 S.Ct. 2569, we believe plaintiff's contentions abuse the notions of "fair play and substantial justice," and accordingly we hold a Mississippi court could not assume jurisdiction of this case in accordance with due process. This holding commands dismissal of the case in accordance with defendant's motion.

## III. CHOICE OF LAW IN MISSISSIPPI

We spoke earlier of the *Steele v. G. D. Searle & Co.* case with which plaintiff's counsel has been involved. In *Steele* a Kansas resident was injured by a product of defendant, a corporation doing business in Mississippi, and suit was brought in Mississippi after the action was foreclosed in Kan-

sas by K.S.A. 60–513. Plaintiff asserted jurisdiction through the attachment, pursuant to Mississippi statute, of debts owed defendant by Mississippi domiciliaries. The district court denied attachment was a valid ground for securing jurisdiction, but the Court of Appeals for the Fifth Circuit reversed, albeit reluctantly, being unwilling "to assimilate *in rem* and *in personam* actions for the purpose of judging the constitutionality of a state exercise of jurisdiction." 483 F.2d 339, 347 (5th Cir. 1973). We trust no court will henceforth feel constrained to follow "hoary rules of *in rem* jurisdiction," Id. at 347, in light of the Supreme Court's decision in *Shaffer v. Heitner, supra.* Indeed, plaintiff's counsel informs us the jurisdictional issue in *Steele* is undergoing reevaluation in the Mississippi court in light of *Shaffer.* See Comment, 45 Miss.L.J. 267 (1974).

More important for our purposes, however, are the two subsequent district court opinions in *Steele* dealing with choice of law and the Mississippi and Kansas statutes of limitations. After remand from the Fifth Circuit, the defendant in *Steele* moved for summary judgment on the basis the Kansas limitations statute applied and barred the action in Mississippi. 422 F.Supp. 560 (S.D.Miss.1976). The court denied the motion on the ground Mississippi courts under that state's conflicts rules would apply the substantive law of the state which had the most contacts with the action, but on procedural matters would apply Mississippi law. Further, the court held that under Mississippi law statutes of limitation generally fall into the "procedural" category, and thus that the longer Mississippi statute was applicable to the action. Defendant moved the court to vacate or reconsider its order, and the court reluctantly adhered to its decision the Mississippi statute was applicable. 428 F.Supp. 646 (S.D.Miss.1977). Plaintiff's choice-of-law argument in the present case, and defendant's attack on that argument, is in large measure an "instant replay" of the controversy which has taken place at the district court level in *Steele.*

■ Plaintiff's argument originates with a principle of common law codified in Restatement 2d, Conflict of Laws § 142(2):

An action will be maintained if it is not barred by the statute of limitations of the forum, even though it would be barred by the statute of limitations of another state

.  .  . .

This principle rests upon the more general notion that no forum should be compelled to adopt procedural mechanisms foreign to it. This is an entirely defensible rule:

Sound sense and practical reasons dictate that a suit on a foreign cause of action should be processed and tried according to the procedural rules of the forum state. It would be an impossible task for the court of such a state to conform to procedural methods and diversities of the state whose substantive law is to be applied. The determination of that law is a difficult enough burden to impose upon a foreign tribunal.

*Heavner v. Uniroyal, Inc.,* 63 N.J. 130, 305 A.2d 412, 415 (1973). The difficulty arises such as that before us in that the common law recognized statutes of limitations as "procedural." This is, in large part, a matter of historical accident; statutes of limitation are characterized as substantive in continental legal systems based on civil law. Comment, *Choice of Law: Statutes of Limitation in the Multistate Products Liability Case,* 48 Tul.L.Rev. 1130, 1133–35 (1974) [hereinafter Comment, *Multistate Products Liability*]; McDonnold, *Limitation of Actions—Conflict of Laws—Lex Fori or Lex Loci?,* 35 Tex.L.Rev. 95, 98–100 (1956) [hereinafter McDonnold, *Limitation of Actions*] It cannot be disputed, however, that the prevailing view of the common law is that a state will apply the *lex fori,* its own limitations period, to transitory actions.

The theory underlying the *lex fori* doctrine is that statutes of limitations bar only the *remedy* in the state where they are applied; a plaintiff can enforce his right to recover, which continues to exist elsewhere if a remedy can be found. This right-remedy distinction goes hand-in-hand with the characterization of limitation statutes as "procedural." Dissatisfaction with this formulation, and the odd results it effects in certain cases, has led to the formulation of two exceptions to the rule: the court-made theory of "built-in" limitations statutes, and the legislative enactment of "borrowing statutes."

■ The Supreme Court has held that statutes of limitation may fairly be characterized as "substantive," and hence applied by the "foreign forum," if defendant's liability and plaintiff's remedy are created by the same statute or statutes, *The Harrisburg,* 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886), or if the remedy is so "inseparable" from the right as to qualify it, *Davis v. Mills,* 194 U.S. 451, 24 S.Ct. 692, 48 L.Ed. 1067 (1904). This "built-in" exception has come to mean that a foreign statute of limitations will be treated as "substantive," and hence applied by the courts of the forum, when the courts of the state whose substantive law is applied treat the right as contingent upon the continued existence of the remedy:

An action will not be entertained in another state if it is barred in the state of the otherwise applicable law by a statute of limitations which bars the right and not merely the remedy.

Restatement 2d, Conflict of Laws § 143. See Milhollin, *Interest Analysis and Conflicts Between Statutes of Limitation,* 27 Hastings L.J. 1, 3–4 (1975) [hereinafter Milhollin, *Interest Analysis*]. That the courts of the state whose law is to be applied in tort cases rarely have the slightest interest in whether their statutes of limitation bar rights or mere remedies, since the distinction is generally immaterial for their purposes, does not argue against the salutary effects of the "built-in" exception to the *lex fori* rule, for the exception as formulated functions as "an escape device that allows the forum court, in a limited number of cases, to avoid the harsh results of the general rule." Comment, *Multistate Products Liability,* supra, at 1136.

■ Mississippi recognizes this exception to the common law, and will apply another state's statute of limitations to an

action governed by the substantive law of that state unless the statute acts as "a procedural bar to legal remedies and not as an extinguisher or qualifier of a . . . cause of action," *Cummings v. Cowan*, 390 F.Supp. 1251, 1255 (N.D.Miss.1975); see *Ramsay v. Boeing Co.*, 432 F.2d 592 (5th Cir. 1970). However, it is clear Mississippi courts would not apply this principle to the (non-statutory) cause of action involved in this case. The Kansas Supreme Court has commented that Kansas limitations statutes do not bar a plaintiff's right to recover. *Murray v. Modoc State Bank*, 181 Kan. 642, 313 P.2d 304 (1957); see *Steele v. G. D. Searle & Co., supra*, 422 F.Supp. at 560.

■■■ Mechanical application of the *lex fori* with regard to statutes of limitation may also be avoided by the application of "borrowing statutes," which usually provide that another state's limitations statute will apply to an action brought in the forum state if the parties do not reside in the forum or the cause of action arose elsewhere; most such statutes contain exceptions in favor of resident plaintiff. Anno. 67 A.L.R.2d 216, 218. Mississippi has enacted a borrowing statute, Miss.Code 1972 § 15–1–65:

> When a cause of action has accrued in some other state or in a foreign country, and by the law of such state or country, or of some other state . . . where the defendant has resided before he resided in this state, an action thereon cannot be maintained by reason of lapse of time, then no action thereon shall be maintained in this state.

A quite literal reading of the disjunctive phrasing would lead one to believe Mississippi would not apply its own statute of limitations to an action barred where it arose *or* where the defendant previously resided. See Vernon, *Statutes of Limitation in the Conflict of Laws: Borrowing Statutes*, 32 Rocky Mtn.L.Rev. 287, 295 (1960) [hereinafter Vernon, *Statutes of Limitations*]. Yet, the Mississippi statute has been construed to benefit only a nonresident who comes to Mississippi to reside after a claim against him is barred where

he was previously subject to suit. Although a corporation may partake of the protection of the statute, *Stavang v. American Potash & Chem. Corp.*, 227 F.Supp. 786 (S.D.Miss.1964), it cannot do so if it was "doing business" in Mississippi when the action arose, since the statute does not apply in favor of "residents." *Louisville & N.R. Co. v. Pool*, 72 Miss. 487, 16 So. 753 (1895); see *Kershaw v. Sterling Drug, Inc.*, 415 F.2d 1009 (5th Cir. 1969). Although certainly some convincing policy arguments could be made against such an interpretation [it has even been speculated that the purpose of the statute as so interpreted might be "to encourage immigration," see *Robinson v. Moore*, 76 Miss. 89, 23 So. 631, 633 (1895)], the fact remains that defendant cannot invoke the operation of the statute as it is presently interpreted. We do not believe it matters that defendant did not maintain a *manufacturing* facility in Mississippi at the time of the accident, since it appears that qualification to do business is the equivalent of "residence" for purposes of the Mississippi borrowing statute, and it is not disputed defendant had qualified to do business in Mississippi prior to the time injury was sustained by plaintiff.

Since neither the accepted exceptions to the *lex fori* rule is applicable to this case, we proceed to examine whether Mississippi would indeed apply its statute of limitations to the case before us. Although the jurisdictional issue is alone dispositive of this case, and "the evils of forum shopping may best be confronted with use of rules of jurisdiction . . . ," Comment, *Multistate Products Liability*, supra, at 1146, we feel nevertheless that the choice-of-law issues raised by this case deserve extended comment for policy reasons beyond the isolated factual situation here presented.

We have spoken of the necessity that a forum apply its own procedural rules to a "foreign" cause of action coming before it. However, a characterization of statutes of limitation as "procedural" for choice-of-law purposes is more a matter of convenience than necessity; indeed, "convenience" may be the only justification for the rule, and

this is scant reason indeed for application of a principle which leads to such curious results. Vernon, *Statutes of Limitation,* supra, at 288–89; Comment, *Multistate Products Liability,* supra, at 1135. Although an attempt to comply with the purely procedural rules of another jurisdiction would invite chaos, "[t]he time bar does not deal with the method in which facts are presented to the court, as do procedural rules, but with the legal effect of a fact, the lapse of time, upon the plaintiff's rights." Note, *An Interest-Analysis Approach to the Selection of Statutes of Limitation,* 49 N.Y.U.L.Rev. 299, 301 (1974) [hereinafter Note, *Interest-Analysis*]. Nor are statutes of limitation or other jurisdictions particularly difficult to locate or apply.

Nor does the right-remedy analysis traditionally used as a basis for the mechanical application of a forum's statute of limitations provide convincing support for the rule, for it is a technical rationalization only. "[C]an a right be truly said to exist . . . when all remedy upon it is legally extinguished?" *LeRoy v. Crowinshield,* 15 Fed.Cas. No. 8,269, p. 362 (C.C.Mass.1820). A right which can no longer be enforced is truly "shorn of its most valuable attribute." Lorenzen, *The Statute of Limitations and the Conflict of Laws,* [hereinafter Lorenzen, *The Statute of Limitations*], 28 Yale L.J. 492, 497 (1919). The right-remedy distinction "does not make very good sense," Leflar, supra, § 127 at 253, and if the artificial distinction were abolished for conflicts purposes, it is doubtful it would have any continued utilization in other areas. Sedler, *The Erie Outcome Test as a Guide to Substance and Procedure in the Conflict of Laws,* 37 N.Y.U.L.Rev. 813, 846 n.148 (1962) [hereinafter Sedler, *The Erie Outcome Test*].

Commentators have been nearly unanimous in calling for the demise of the *lex fori* rule when its effect is to allow suit upon a cause of action barred where it arose and in other forums with which the parties have substantial contacts. See Wurfel, *Statutes of Limitations in the Conflict of Laws,* 52 N.C.L.Rev. 489 (1974) [hereinafter Wurfel, *Statutes of Limita-*

*tions*]; Milhollin, *Interest Analysis,* supra; McDonnold, *Limitation of Actions,* supra; Lorenzen, *The Statute of Limitations,* supra. One suggested alternative has been an "interest analysis test" wherein the statute of limitations of the state whose policies are most at stake is applied. See Weintraub, Commentary on the Conflict of Laws (1971). We believe Kansas has the greatest interest in the present action. A suggested alternative has been the "controlling state rule," which mandates the application of the time bar of the state whose substantive law controls plaintiff's cause of action. Note, *Interest-Analysis,* supra, at 299. In the present case, this would be the law of Kansas. An "outcome-determinative" test has been suggested, wherein the forum would adopt as much of the law of the state where the action arose "as is likely to bear materially on the ultimate outcome." Sedler, *The Erie Outcome Test,* supra, at 821. In situations such as that before us, the statute of limitations of the "locus," the state where the injury occurred or the action arose, will always be "outcome-determinative." No matter what test is suggested as a replacement for strict application of *lex fori* in statute of limitations cases, all such theories would reach the same result in the present case: the Kansas limitations statute would bar this action. This is so because all proposals to scrap the *lex fori* rule "at bottom, consider the statute of limitations as basically substantive." Comment, *Multistate Products Liability,* supra, at 1139; see McDonnold, *Limitation of Actions,* supra, at 112. For this reason, we will for our purposes lump all these suggested alternatives under the heading *"lex loci,"* referring to the law of the place where the action arose, the law of the state whose substantive law would apply, the law of the state with the most substantial interest in the outcome of the case—in short, the law of Kansas.

The *lex fori* rule would not invade the interests of the "locus" state unduly if the only purpose of statutes of limitation were the prevention of the assertion of claims arbitrarily considered "stale" and hence

likely to involve obscure evidence and mnemonic failures. The Restatement lists this as the sole basis for limitations statutes. Restatement 2d, Conflict of Laws § 142, comment (d); see *Bott v. Equitable Life Assur. Soc. of U. S.,* 147 Kan. 671, 78 P.2d 860 (1935). However, such statutes also conserve judicial resources by requiring claimants to seek enforcement of their claims promptly, see *Crumrine v. Cummings,* 172 Kan. 290, 240 P.2d 463 (1952), and act to protect defendants from interminable exposure to liability, see *Rochester Am. Ins. Co. v. Cassell Truck Lines, Inc.,* 195 Kan. 51, 402 P.2d 782 (1965). These considerations transcend a mere interest in docket control, and are slighted when another state entertains an action barred where it arose. Note, *Interest-Analysis,* supra, at 302.

Another problem with strict application in the *lex fori* rule is that, in theory, "[t]he purpose of the conflict-of-laws doctrine is to assure that a case will be treated in the same way under the appropriate law regardless of the fortuitous circumstances which often determine the forum." *Lauritzen v. Larsen,* 345 U.S. 571, 591, [73 S.Ct. 921, 932, 97 L.Ed. 1254] (1953). The establishment of a system in which the choice of the forum will not affect the result is the "primary goal" in the law of conflicts. Vernon, *Statutes of Limitation,* supra, at 293. The *lex fori* rule works against this goal; indeed, it encourages forum-shopping by plaintiffs precisely because of the differences in outcome. Leflar, supra, § 127 at 253; Sedler, *The Erie Outcome Test,* supra, at 850. A corporation doing business in several states is particularly vulnerable to this type of maneuvering by a dilatory plaintiff. McDonnold, *Limitation of Actions,* supra. When the law of the appropriate forum bars the action, a plaintiff forum-shops for the sole purpose of finding a jurisdiction which will allow it. This cannot be said to be a desirable result from the point of view of either the most appropriate forum or the forum plaintiff chooses:

> [The *lex fori* rule] increases caseloads, solicits older cases with stale evidence, and denies the defendant a definitive in-

dication as to when his potential liability has expired   .   .   .

> [T]he mechanical simplicity of the *lex fori* rule, based on the fiction that the statute of limitations is a procedural matter, undermines the principal aims of conflicts doctrine and frustrates the legislative purposes which underlie statutes of limitation   .   .   .   .

Note, *Interest-Analysis,* supra, at 302–03. The *lex fori* rule is "neither justifiable by common law tradition, nor by modern rationalizations," Ehrenzweig, Conflicts of Law (2d ed. 1962) § 160 at 430, and this decade has seen the beginnings of a judicial shift away from the rule. See *Dindo v. Whitney,* 429 F.2d 25 (1st Cir. 1970); *Horton v. Jessie,* 423 F.2d 722 (9th Cir. 1970); *Farrier v. May Dept. Stores Co.,* 357 F.Supp. 190 (D.D.C.1973); *Klondike Helicopters v. Fairchild Hiller Corp.,* 334 F.Supp. 890 (N.D.Ill.1971); *Myers v. Cessna Aircraft Corp.,* 275 Or. 501, 553 P.2d 355 (1976); *Waldron v. Armstrong Rubber Co.,* 393 Mich. 760, 223 N.W.2d 295 (Mich.1974); *Heavner v. Uniroyal, Inc.,* supra; *Air Prods. & Chems., Inc. v. Fairbanks Morse, Inc.,* 58 Wis.2d 193, 206 N.W.2d 414 (1973). In the present case, if jurisdiction over defendant were supportable, the argument against application of *lex fori* would be particularly strong since defendant was intended to benefit from the shorter Kansas statute, and there is no indication that Mississippi's longer limitations period was intended to benefit the plaintiff. Although there may be some policy argument to be made for preservation of the *lex fori* rule against corporate manufacturers in the products liability area, even one commentator who suggests choosing the limitations statute most favorable to the products liability plaintiff qualifies his proposal:

> In choosing the law most favorable to the plaintiff, the choice should be limited to those jurisdictions that have had one or more relevant contacts with the case, specifically, the place of manufacture, sale, or injury.

Comment, *Multistate Products Liability,* supra, at 1145.

Mississippi's choice-of-law rules concerning the substantive law applied by Mississippi courts are quite modern. Ten years ago, in *Mitchell v. Craft,* 211 So.2d 509 (1968), Mississippi adopted a "center of gravity" test for application of the proper substantive law. The Mississippi court rejected the "abdication of judicial function" which resulted from application of mechanical tests, and noted, at p. 514, that "a primary consideration in determining applicable law is the advancement of the forum's governmental interests . . . ." In some of the states which have adopted such an "interest-analysis" approach to choice-of-law in the substantive area, the "technique has . . . seeped through to the resolution of statute of limitations questions . . . ." Wurfel, *Statutes of Limitations,* supra, at 560. Indeed, the last reported opinion in *Steele,* supra, forecast such a "seepage" in Mississippi:

> This Court believes, in great part due to the congestion of the court dockets in Mississippi, that the state ultimately may adopt the argument of defendant here, that is, that Mississippi will, on facts akin to those here, find that its center-of-gravity rules applies to the statute of limitations of the state with the most interest in the litigation, particularly when it is obvious that a plaintiff has selected a Mississippi forum solely in order to use its comparatively long period of limitations for tort actions.

428 F.Supp. at 651. While the court would not abandon the *lex fori* rule in the absence of controlling precedent from Mississippi state courts, it did grant the defendant certification under 28 U.S.C. § 1292(b) for purposes of an interlocutory appeal to the Fifth Circuit Court of Appeals. We are not informed whether such an interlocutory appeal was made or accepted.

Plaintiff rests his argument that Mississippi would not abandon *lex fori* upon the case of *Vick v. Cochran,* 316 So.2d 242 (1975). In *Vick* all parties to the litigation were residents of Alabama, although the accident occurred in Mississippi. The court, following *Mitchell v. Craft,* declared that Alabama law should govern, except that:

> (1) Mississippi rules of the road should apply to questions of alleged negligence in the actual driving of the truck and (2) the period of limitations, by ancient precedent, is governed by the law of the forum.

*Vick, supra,* 316 So.2d at 246. This is the sole reference to the *lex fori* rule; it does not affirmatively appear that the question was fully briefed and argued to the court. It does appear, however, that the Mississippi court was "not happy" with the plaintiff's choice of forum, [see *Steele, supra,* 428 F.Supp. at 651], although it reversed the lower court's finding for plaintiff on other grounds. We may further question the status of *Vick* as commanding precedent since the Mississippi limitations statute might have applied even had the court formally abandoned the strict *lex fori* rule. The action "arose" in Mississippi, and Mississippi has an interest in the action in that highway safety within its boundaries, and the possibility of creation of Mississippi creditors (doctors, hospitals, automotive services), are areas of legitimate state concern.

Mississippi can have no such concern with the present case. It can have no interest in the protection of a plaintiff who does not reside in Mississippi, and whose only apparent connection with the state has been the retention of Mississippi counsel. Mississippi can have no more than a general "humanitarian" interest in punishing the defendant for manufacturing an allegedly defective product, since none of defendant's activities in the state have the remotest connection with the injury or the offending device.

On the other hand, Mississippi may be interested in keeping such actions out of its courts, since an influx of actions unconnected with the state certainly poses a burden upon local taxpayers and crowds court dockets, making it more difficult for actions legitimately brought in Mississippi to be heard expeditiously. Further, corporations may not think it wise to qualify for business in Mississippi if doing so might subject them to extended liability under the state's longer limitations period for injuries sus-

tained anywhere their products might wind up.

Thus, we are inclined to believe that, given the facts now before us and the progressive thinking of Mississippi courts on choice-of-law problems as exhibited in *Mitchell v. Craft, supra*, Mississippi would very likely abandon the strict *lex fori* rule. The rather perfunctory reference to "ancient precedent" in the *Vick* case, and the fact that other cases of adherence to *lex fori* predate *Mitchell v. Craft* [see, e. g., *Guthrie v. Merchants Nat'l Bank of Mobile*, 254 Miss. 532, 180 So.2d 309 (1965)], buttress our belief.

We referred earlier to possible constitutional limitations on a state's choice of law. Certainly, if such limitations exist they might be persuasive in influencing a state to abandon a conflicts policy which may impair the constitutional rights of some litigants. The parties have touched upon this matter in their briefs, but we must note at the outset that this is an area of law "by no means settled." *Shaffer, supra*, 433 U.S. at 225, 97 S.Ct. 2569. (Brennan, J., concurring and dissenting). However, such cases as *Home Ins. Co. v. Dick*, 281 U.S. 397, 50 S.Ct. 338, 74 L.Ed. 926, suggest that constitutional considerations may impose strictures upon a state's choice of law parallel to those imposed by the due process clause on a plaintiff's choice of forum. Indeed, some have suggested that the tests utilized in scrutinizing the propriety of jurisdiction (such as "fairness" and the extent of contacts with the forum) be applied to choice-of-law problems. See *Shaffer, supra*, 433 U.S. at 224–24, 97 S.Ct. 2569 (Brennan, J., concurring and dissenting); *Hanson v. Denckla*, 357 U.S. 235, 258, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) (Black, J., dissenting); Martin, *Constitutional Limitations on Choice of Law*, 61 Cornell L.Rev. 185, 202 & n. 61 (1976) [hereinafter Martin, *Constitutional Limitations*]. See also, Casad, *An End to Ambivalence, supra*, 26 Kan.L.Rev. at 83:

> The *Shaffer* decision's elimination of the power theory in the realm of jurisdiction,

however, may portend a similar fate for the territorialist approach to choice of law. It may be a step toward a coherent national theory of choice of law . . . .

In this vein, defendant claims the application of the longer Mississippi statutes of limitation in the present case, in view of the lack of contacts between the forum and the case itself, is so unfair as to violate the Due Process Clause of the Constitution. Defendant's argument builds upon the *Dick* case, wherein the Supreme Court refused to allow the state of Texas to impose a statute extending the time to sue upon the law of Mexico, where most of the "contacts" relevant to the action were situated. Although the Texas statute involved in *Dick* was in a sense "procedural," the Court held that the limitations period in that context was a substantive matter, and its operation deprived the defendant of property without due process of law. This aspect of the due process clause has not been developed, however, perhaps because of expanding notions of procedural due process in the jurisdictional area; if a state lacks the requisite contacts necessary to support an assumption of jurisdiction, the conflicts question need never be reached. Thus due process limitations on choice of law may have no meaning if personal jurisdiction is properly assumed, except when a state "has no other contact with the parties or with the facts except that it is the forum." Weintraub, *Due Process and Full Faith and Credit Limitations on a State's Choice of Law*, 44 Iowa L.Rev. 449, 464 (1959). This, we believe, is such a case. The present case certainly invites application of due process limitations to Mississippi's choice of law:

> It should be a violation of procedural due process for a forum, by the device of affixing a "procedural" label, to avoid the application of another state's rule, if the policies underlying the other state's rule would be advanced by applying that rule to the case at bar, the rule is of a kind which has high potential for affecting the outcome on the merits, the forum rule is not inordinately difficult for the forum to find and apply, and application of the forum's different rule will not advance

any rationally applicable policy of the forum.

Weintraub, *The Erie Doctrine and State Conflict of Laws Rules,* 39 Ill.L.J. 228, 243 (1964) [hereinafter Weintraub, *The Erie Doctrine* ]. Such an application of due process principles would do much to discourage interstate forum-shopping of the type encountered in the present case. However, we believe our interpretation of *Perkins, supra,* largely obviates the need to develop any such doctrine. It is difficult to envision a situation in which a state has sufficient "contacts" with an action to make its assumption of personal jurisdiction reasonable and fair, and yet has no interest in the litigation which would make application of its conflicts rules to the case permissible under a due process theory of choice of law. Should the Supreme Court later retreat from the clear import of its remarks in *Shaffer,* supra, further consideration might need to be given to a due process analysis of choices of law. We note that in such a situation plaintiff's attempt to distinguish *Dick* would not be persuasive to this court. Plaintiff, in his brief at p. 37, dismisses *Dick* on the grounds that the statute there in question was "substantive" and, in language by now familiar, purported to bar the right as well as the remedy. There is dicta in *Dick* supporting such a distinction; 281 U.S. at 409, 50 S.Ct. 338. However, any such argument must rely on the historical stature of the *lex fori* rule, with its illogical characterization of limitations statutes as "procedural," and thus is subject to the same criticisms. Plaintiff would claim that no property of defendant can be taken without due process, since the Kansas limitations statute does not extinguish the right to recover; yet it must be conceded this orphan "right" is worthless unless Mississippi, an apparently "disinterested" forum, sees fit to pair it with a "remedy." That the right-remedy and substance-procedure distinctions urged by plaintiff are of long standing does not compel the conclusion that their application cannot violate due process. "Traditional notions of fair play and substantial justice can be as readily offended by the perpetuation of ancient forms that are no longer justified as by the adoption of new procedures . . . ." *Shaffer, supra,* 433 U.S. at 212, 97 S.Ct. at 2584.

Defendant also claims any attempt by Mississippi to apply its longer limitations statutes would be an affront to the Full Faith and Credit Clause of the Constitution. The analysis of this claim must rest upon the respective rights of the states concerned, rather than the rights of the defendant itself:

> [T]he litigant's right to the "proper" choice of law is often the right of a state other than the forum, which, for purposes of practicality and convenience, he is allowed to represent. Freedom from an improper assertion of judicial jurisdiction, however, is almost always the litigant's personal right.

Martin, *Constitutional Limitations,* supra, at 203. *Dick* and its progeny dealing with international conflicts are outside the scope of such analysis, since full faith and credit applies only between the states, and is an expression of a need for national uniformity. It has been suggested that while due process, with its focus upon the relationship between the state and the individual, will almost never be effective in limiting a state's choice of law once the requisites of personal jurisdiction are satisfied, some implicit constitutional limitations can be gleaned from principles of full faith and credit:

> When the approach that allows a state to apply its own law in marginal cases is augmented by expanded bases of personal jurisdiction . . . the combination raises the specter of massive invasions by one state into the policies of another, rigidly enforced by the rules of full faith and credit to judgments.

Martin, *Constitutional Limitations,* supra, at 230. We might add that such an affront may also result from forum-shopping by plaintiff for a favorable statute of limitations, followed by forum-changing by the defendant under 28 U.S.C. § 1404, with the result which plaintiff urges upon us today. Only the fact this case has been "routed

through" a foreign forum prevents this Kansas district court from dismissing this action in concordance with the legislative wishes of the state of Kansas, without further ado.

Plaintiff cites *Wells v. Simons Abrasive Co.,* 345 U.S. 514, 73 S.Ct. 856, 97 S.Ct. 1211 (1953), for the proposition that "applying the statute of limitations of the forum to a foreign substantive right [does] not deny full faith and credit." Id. 345 U.S. at 516, 73 S.Ct. at 857; see *Steele,* supra, 422 F.Supp. 560, 562 (S.D.Miss.1976). We have no argument with such a statement when it is applied to a fact pattern analogous to that in *Wells,* wherein the forum's shorter statute of limitations was held to bar maintenance of a transitory action which still could be sued upon in the state where it arose. This is an acceptable result even under an interest-analysis theory of conflicts, because the forum has an important interest—that of docket control—in such a situation. The need for national uniformity which underlies full faith and credit principles is not significant in the *Wells*-type situation; there need not be an available forum in every state for every cause of action. If a forum applies its own statute to bar a suit still viable in a more proper forum, the merits of the controversy are not foreclosed, and no justifiable expectation of the parties is defeated.

On the other hand, the forum's application of its longer statute of limitations to an action barred where it arose cannot be justified in terms of forum interest, at least where the parties' connection with the forum is no more than tangential. In the *Wells* situation, the forum has an interest in preventing the prosecution of an action its own legislature would characterize as stale; in the situation before us it is highly unlikely any of Mississippi's interests would be served by sustaining a cause of action longer than the state which created it. That the language of *Wells* rests upon a sound logical base only in fact situations analogous to that encountered by the Court in *Wells* has not gone unnoticed by the commentators:

In the final analysis, [*Wells*] does not represent a satisfactory approach to the problem of the application of the forum's statutes of limitations. Although the case involved only a refusal by the forum to apply the foreign jurisdiction's longer statute of limitations, little of the Court's language reflects any awareness that the issues might be different when the forum rejects the foreign jurisdiction's *shorter* statute of limitations. One might therefore suggest a simple constitutional rule with respect to the statutes of limitations in cases where the forum has no substantive interests: The forum may be justified in using its own statute of limitations to bar a cause of action that is still good in the state which created it, but a state should be forbidden from entertaining a cause of action after it is dead in the state which created it.

Martin, *Constitutional Limitations,* supra, at 220–21.

Application of a forum's limitations rule to bar suits on admittedly valid and existent extrastate claims has a different theoretical justification [than use of the forum's longer statute]. Access to forum courts is a matter for forum law to determine. Any state may bar suits on extrastate claims on the same limitations grounds it uses to bar suits on domestic claims. The full faith and credit clause is not violated by exclusions, and certain social policies may be served by them. The forum's limitations rules represent its policy on the enforcement of stale claims, and a policy of repose may be relevant to all lawsuits filed in the forum's courts regardless of where the claims arose.

Leflar, supra, at 304. Thus we believe *Wells* and similar cases should be distinguished from that before us; indeed, even some commentators who have urged adoption of the *lex loci* rule when the statute of the "locus" is shorter than that of the forum argue for the *Wells* result when the forum statute is shorter. See, e. g., Lorenzen, *The Statute of Limitations,* supra, at 497–98.

The difficulties, both constitutional and conceptual, in applying the *Wells* rule to a case akin to that before us today were articulated by Justice Jackson in his dissent in *Wells,* 345 U.S. at 521–22, 73 S.Ct. at 860:

> [T]he essence of the Full Faith and Credit Clause of the Constitution is that uniformities other than just those within the state are to be observed in a federal system. The whole purpose and the only need for requiring full faith and credit to foreign law is that it does differ from that of the forum . . . Application of the Full Faith and Credit Clause prevents . . . disparity by requiring that the law where the cause of action arose will follow the cause of action in whatever forum it is pursued.

Justice Jackson goes on to postulate just the situation before us today:

> Suppose the plaintiff might have obtained service of process in several different states . . . she could choose from as many varieties of law as of forums . . . The life of a cause of action is then determined by the fortuitous circumstances that enable her to make service of process in a certain state or states.

We believe these fears have been realized in the present case.

It does not follow, however, that the Full Faith and Credit Clause should be applied by federal courts in pursuit of uniformity regardless of the locus of litigation. It must be realized that such action would entail the abandonment of the rule of *Klaxon,* supra, and would have serious repercussions within the federal system. The Supreme Court felt the *Klaxon* principle necessary in light of the concerns of *Erie,* i. e., the avoidance of forum-shopping between state and federal courts within a given state. On the other hand, as the case before us demonstrates, *Klaxon* invites interstate forum-shopping due to the vagaries of the choice-of-law rules of the states. *Klaxon* has been criticized on this ground. See Horowitz, *Toward a Federal Common Law Choice of Law,* 14 U.C.L.A.L.Rev. 1191 (1967) [hereinafter Horowitz, *Federal Common Law*]; Hart, *The Relations Between State and Federal Law,* 54 Col.L.Rev. 489, 513–15 (1954). Yet it must be realized that as long as the states have divergent choice-of-law rules, no litmus-paper test applied by the federal courts will eliminate forum-shopping both within a state and between the states.

It has been suggested that one way to avoid the lack of uniformity resulting from dissimilar state choice-of-law rules would be a federalization of conflicts rules, based on the power inherent in the Full Faith and Credit Clause. Horowitz, *Federal Common Law,* supra. While such action might have a salutory effect in the choice-of-law field, it would certainly have a less-than desirable effect on the federal system. In order to eliminate both interstate *and* intrastate forum-shopping, such a change would have to be binding, not only upon the federal courts, but also upon the courts of each state. It cannot be blandly assumed that each state judiciary would welcome a new doctrine which would make every choice-of-law decision of constitutional magnitude. Such a step is not to be taken impulsively.

As long as the states are to be afforded some measure of independence in formulating choice-of-law rules affecting state-created rights (and it must be remembered that federal diversity jurisdiction to hear cases affecting such rights is limited, derivative, and itself not free from attack), some measure of forum-shopping is inevitable, and the choice remains that between interstate abuse and intrastate abuse. Perhaps expanding concepts of personal jurisdiction, and the increasingly interstate nature of actions (the rapidly-escalating incidence of products liability cases, such as that before us, is a case in point), combine to make forum-shopping between states the greater of the two evils. On the other hand, it may be argued that interstate forum-shopping may be held in check by due process circumscription of personal jurisdiction, and hence of available forums, and by the slow but inevitable tendency of the states to adopt uniform and enlightened choice-of-law principles. Mississippi, for example, has nothing to gain but docket

congestion from application of its longer limitations statute to the case before us. In any event, the Supreme Court has spoken in *Klaxon,* and no nationwide uniformity in conflicts principles based upon the Full Faith and Credit Clause may be effected while the case stands. We must therefore decline defendant's invitation to hold Full Faith and Credit principles dispositive of the choice-of-law issue before us.

We do not believe our decision of Full Faith and Credit has been an exercise in futility from defendant's point of view, however. "[T]he fact that there is a case to be made for developing . . . a federal common law of choice of law should be a factor in the development by state courts of their conflicts doctrine." Horowitz, *Federal Common Law,* supra, at 1210. We believe the constitutional considerations discussed above would provide added impetus for the adoption of a "lex loci" conflicts rule by Mississippi, at least in the situation where an action is barred in the state where it arose.

Plaintiff bids us remember our place as a Kansas federal court, sitting as a Mississippi federal court, applying the law developed in Mississippi state courts; he notes we are "bound and obligated" to follow the statutory and legislative system of Mississippi "without deviation." Plaintiff's brief at 31. Indeed, the Mississippi federal district court in *Steele,* supra, although fully cognizant of the drawbacks of the *lex fori* rule, declined to apply the bar of Kansas because it had been unable to find a state court decision doing so.

■ We do not believe the rules of *Erie* and *Klaxon* are so strict as plaintiff would contend. The danger of intrastate forum-shopping, with which *Erie* and *Klaxon* are concerned, would continue to exist if federal courts must always apply the last relevant state decision, while state courts are free to change the law. Weintraub, *The Erie Doctrine,* supra, at 244–46. Thus, in the face of confusion, doubts, or ambiguities in state law a federal court may choose the rule the state court is likely in the future to adopt. See *Bernhardt v. Poly-*

*graphic Co. of America,* 350 U.S. 198, 205, 76 S.Ct. 273, 100 L.Ed. 199 (1956).

■ We will admit to some unfamiliarity with the Mississippi judiciary and its methods of reaching decisions, Wright, supra, § 59 at 271, and that there is an element of presumption in forecasting alteration of the law of another state by judicial fiat. However, the cases cited by plaintiff must be accounted the weakest of precedent, and such prognostication by a "foreign" federal court is not entirely unprecedented. See, e. g., *Mason v. American Wheel Works,* 241 F.2d 906 (1st Cir. 1957) (change in established Mississippi law forecast by "foreign" Court of Appeals). We feel that the *lex fori* rule would have been abandoned by Mississippi courts with regard to this particular case, had such courts taken jurisdiction of the action in the first place. Again, our conclusion in this regard commands dismissal of the action in accord with defendant's motion.

## IV. CONCLUSION

We are not insensitive to the grievous injury plaintiff claims to have suffered, or to the possibility defendant's conduct has been highly blameworthy in its design and manufacture of the offending product. However, we firmly believe plaintiff through delay has forfeited his right to ask recompense in any proper forum. Plaintiff's argument is built upon a chain of jurisdictional and choice-of-law principles which, although established by precedent and capable of reasonable application in many cases, lead to an unjustifiable result upon the facts of this case. If limitations statutes and the policies underlying them are to count for anything at all, plaintiff cannot be allowed to proceed with this action.

Accordingly, defendant's motion for summary judgment will be granted, and the complaint of plaintiff dismissed.

IT IS SO ORDERED.